1 | John Elson (State Bar No. 92620)
1840 41st Avenue
#102-176
Capitola, CA 95010
Telephone: (831) 475-8535
Facsimile: (831) 475-8532
E-mail: j_h_elson@yahoo.com

Attorney for Plaintiff
TERRY DOUBT

John M. Cowden (State Bar No. 224963)
S. Christine Young (State Bar No. 253964)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile:  (415) 394-9401
E-mail: cowdenj@jacksonlewis.com
E-mail: youngc@jacksonlewis.com

Attorneys for Defendant
NCR CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY DOUBT,<br>an individual,<br>  Plaintiff,<br>v.<br>NCR CORPORATION, A Maryland Corporation, and DOES 1 through 100, inclusive,<br>  Defendants. | Case No. C 09-05917 SBA<br><br>**PLAINTIFF TERRY DOUBT'S AND DEFENDANT NCR CORPORATION'S JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>Action Removed: December 17, 2009<br>Trial Date: None yet set. |

Pursuant to this Court's Order Setting Initial Case Management Conference and Civil Local Rule 16-9, plaintiff Terry Doubt ("plaintiff" or "Doubt") and defendant NCR Corporation ("defendant" or "NCR") by and through their respective counsel, submit the following Joint Case Management Conference Statement and Proposed Order.

///

1. **Jurisdiction and Service**

The Court has jurisdiction in this case on the basis of diversity. 28 U.S.C. §§ 1332(a) and 1441(a). Plaintiff was at the time the action commenced, and still is, a citizen of the State of California, and currently resides in California. Defendant was at the time the action commenced a citizen of the State of Ohio under 28 U.S.C. Section 1332(c), in that its principal place of business was in the State of Ohio. Defendant is in the process of moving its principal place of business to Atlanta, Georgia. Further, defendant is incorporated in the State of Maryland. The amount in controversy in this action exceeds $75,000.00. NCR has been served with a summons and complaint in this action.

2. **Facts**

On September 15, 2009, plaintiff commenced the action entitled *Terry Doubt v. NCR Corporation, A Maryland Corporation, and Does 1-100* by filing a complaint against defendant in the Superior Court of the State of California, Alameda County, Case Number RG09474148 ("Complaint"). Defendant removed the case to Federal Court on December 17, 2009.

Plaintiff's Complaint alleges the following causes of action: (1) discrimination based on age; (2) retaliation for complaints concerning working conditions; and (3) retaliation for complaints concerning violations of law. Plaintiff worked for NCR as a Field Engineer; his employment was terminated on September 18, 2008. Plaintiff alleges that his employment was terminated because of his age and in retaliation for complaining about working conditions and violations of law. Defendant denies plaintiff's allegations, and specifically denies it discriminated against plaintiff based on any protected characteristic or behavior. Defendant maintains it terminated plaintiff's employment based on plaintiff's poor performance.

The factual issues that the parties dispute include the following:
- Whether plaintiff complained to defendant about working conditions;
- Whether plaintiff complained to defendant about violations of law;
- Whether defendant treated plaintiff differently because he was over 40 years old;
- Whether plaintiff suffered emotional distress as a result of any allegedly illegal treatment by defendant;

- Whether defendant e plaintiff's job performance was properly evaluated and found to be substandard prior to his termination;
- Whether plaintiff incurred lost wages due to any allegedly illegal conduct by defendant and, if so, in what amount;
- Whether plaintiff has failed to mitigate his damages.

3. **Legal Issues**

The parties have met and conferred regarding the numerous issues they believe exist or potentially exist in this matter. The fact that any particular issue is listed does not necessarily indicate that both parties agree that the issue is relevant to the case, or even appropriately stated. Rather, it simply indicates that at least one of the parties believes the issue, as stated, is relevant at this time.

The legal issues that the parties dispute include the following:

- Whether, in violation of California public policy, defendant discriminated against plaintiff on the basis of his age;
- Whether, in violation of California public policy, defendant retaliated against plaintiff for complaining about working conditions;
- Whether, in violation of California public policy, defendant retaliated against plaintiff for complaining about violations of law;
- Whether defendant acted with malice, oppression, fraud, and in reckless disregard of plaintiff's rights;
- Whether plaintiff is entitled to any damages as a result of defendant's alleged actions;
- Whether plaintiff can establish the essential elements for any of his causes of action;
- Whether defendant is entitled to summary judgment;
- Whether plaintiff has failed to mitigate his damages.

4. **Motions**

Defendant filed a motion to compel arbitration which is presently scheduled to be heard

3

JOINT CASE MANAGEMENT STATEMENT  
AND [PROPOSED] ORDER

Case No. C 09-05917 SBA

on June 29, 2010. Plaintiff intends to file a motion to amend his Complaint to include additional state law claims. Defendant will file dispositive motions to dismiss plaintiff's claims. If the case proceeds to trial or arbitration, defendant may move to bifurcate liability and damages. The parties agree that additional motions, not presently foreseeable, may be necessary depending on the results of discovery and further investigation. The parties further agree that pre-trial motions shall be governed by Local Rule 7, without modification, should defendant's motion to compel arbitration be denied.

5. **Amendment of Pleadings**

Plaintiff intends to file a motion to amend his Complaint to include additional state law claims. The parties propose September 15, 2010 as a deadline for filing a motion to amend the pleadings.

6. **Evidence Preservation**

Both parties have taken steps to preserve evidence relevant to the issues in this action. Specifically, defendant has issued evidence preservation notices to all employees reasonably expected to possess relevant evidence.

7. **Disclosures**

The parties have made their initial disclosures, pursuant to Fed. R. Civ. P. 26. The parties have exchanged lists of potential witnesses and have produced documents they expect to rely upon at trial or arbitration of this matter.

8. **Discovery**

The parties have not engaged in any formal discovery to date.

a. **Written discovery**

The parties agree that responses to written discovery requests shall be due within thirty (30) days of propounding the requests, if the discovery requests are served by hand. If the requests are served by mail, the parties shall have thirty-five (35) days to respond to the discovery requests.

Defendant agrees that all requests for production shall be governed by Federal Rule of Civil Procedure 34, without modification of that rule. Plaintiff asks that electronically stored

information ("ESI") being produced be both printed and provided electronically, as plaintiff has produced in both formats in his initial Rule 26 disclosures to defendant. The parties have already negotiated and filed a stipulated protective order.

The parties agree that all requests for admission shall be governed by Federal Rule of Civil Procedure 36, without modification of that rule.

Defendant submits that all interrogatories shall be governed by Federal Rule of Civil Procedure 33, without modification of that rule. Plaintiff submits that the parties should be allowed to propound the California Judicial Council form interrogatories - employment, and form interrogatories - general, interrogatory 17.1, without those interrogatories counting in the limitation of 25 interrogatories imposed by Rule 33(a)(1).

### b. Discovery Limitations

The arbitration agreement NCR seeks to enforce limits discovery to two depositions per side, plus depositions of any expert witnesses, although either party may petition the arbitrator for additional discovery. Should the Court deny defendant's motion to compel arbitration, defendant agrees to limit its discovery as required by the Federal Rules unless the parties mutually agree otherwise. Plaintiff requests that the ten deposition rule in FRCP Rule 30(a)(2)(A)(i) be modified so that the number of depositions not be limited to ten, but that plaintiff will consume no more than seventy hours in direct examination of deponents whose depositions are noticed by plaintiff, so that the total time consumed in plaintiff's examination of witnesses in depositions noticed by plaintiff conforms to the time limitations of Rules 30(a)(2)(A)(i) and 30(d)(1).

### c. The Parties' Respective Discovery Plans

The fact that any particular item of discovery is listed does not necessarily indicate that both parties agree that the discovery is relevant to the case. Rather, it simply indicates that at least one of the parties believes the discovery is relevant.

i. Plaintiff's Discovery Plan

In this case, plaintiff will follow the paper trail already in hand, and plaintiff proposes to engage in discovery in stages.

By the time of the June 29th hearing, plaintiff will have served his first round of paper discovery (interrogatories under Rule 33, a demand for documents under Rule 34, possibly requests for admissions under Rule 36).

If not by the time of the June 29th hearing, then very shortly thereafter, plaintiff will serve (1) a demand to permit entry to inspect and search NCR=s computers for electronically stored information (AESI@) under Rule 34 to obtain the ESI, and (2) a deposition of NCR under Rule (30)(b)(6) and request for documents under 30(b)(2), all of which will take place at some point in the August 16th - 27th time frame, as these are the first available dates when defense counsel has indicated his availability, probably in Atlanta where NCR is now headquartered.

After receipt of the fruits of this discovery, which may require motions to compel, plaintiff will depose a number of individuals: Erick Aguilar, John Foote, John Harvey, Brenda Michalek, Vicki Rennick, Joe Hoyle, Chris Cheadle, Chris Wallace, Bruce Schagunn, Steve Battleson, Hannibal Morales, Don Pursell, Jeff Kiss, and those whose names appear in documents yet to be produced.

While the number of depositions would exceed ten as allowed by Rule 30(a)(2)(A)(i), plaintiff does not expect any of these depositions to last the full seven hour day allowed by Rule 30(d)(1). Instead, plaintiff expects each individual deposition to last no more than two to three hours, some less than that.

Accordingly, plaintiff requests that he be allowed a total of seventy (70) hours in deposition for direct examination of the deponents, regardless of the number of depositions to be taken by plaintiff.

Due to defense counsel's plans to be out of the country (Sept. 15th - Oct 20th) and trial commitment (November 8th - 24th) it may not be feasible to travel to various points east (Georgia, New York, Illinois) to depose the individuals until December.

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER                                                  Case No. C 09-05917 SBA

Plaintiff's discovery will address several subjects.

**NCR policies and practices concerning evaluating, criticizing or rewarding employee performance, including but not limited to**

"Points": one of NCR's method of acknowledging employee contributions, as reflected by the 08/20/08 Aguilar email "You've Got Points!"

NCR's Business Performance Plan ("BPP") and the extent to which earning a bonus was a measure of an individual employee's performance, including but not limited to

"NCR's 'pay for performance' philosophy" referred to in NCR's 5/29/07 email to plaintiff from Global Compensation,

NCR awarding plaintiff a BPP bonus for 2007, including but not limited to

what was the "actual performance" being referred to in the statement "You have earned a 2007 Business Performance Plan (BPP) award payment based on actual performance against business objectives" in the 03/07/08 email from Global Compensation to plaintiff

how the bonus amount of $1,985.50 paid to plaintiff on 3/14/08 in paycheck #2849098 was determined and/or calculated.

How plaintiff's bonus of $1,985.50 compared to other 2007 bonuses awarded

    to other CEs in plaintiff's territory, 750B

    to other CEs in the 750 region or sub-area,

    to other CEs in the Western area

    to other CEs nationwide

The changes in NCR's BPP referred to by the 7/3/08 email sent on behalf of Chris Cheadle stating "We have changed the BPP incentive plan to allow for improved financial recognition for individual performers."

As of 8/31/08, if the bonus under the BPP was calculated based upon year to date data, would plaintiff have been awarded a bonus for 2008, and if so, in what amount and how would it have been determined and/or calculated

Annual Performance reviews, including but not limited to

    NCR's guidelines for preparation of the evaluation,

    NCR's reasons for and practice of

        having the employee sign the evaluation,

        keeping copies of prepared and/or signed evaluations in NCR records

        how often given

    Why there are no copies in plaintiff's personnel file of the performance evaluations for plaintiff for years 2003, 2004 & 2005?

"PIP", NCR's performance improvement program, including but not limited to

    What were the criteria for putting employee on the program

    What are the written policies/guidelines for or practices governing

        Putting people on

        having employee sign the memo advising of being put on PIP

        keeping copies of prepared and/or signed PIP memos in NCR records

    Monitoring the progress of an employee on PIP, including but not limited to

        meeting periodically with whoever was on PIP

        documenting what happened at the meeting

        sharing the documentation with HR, as reflected by 04/17/08 Michalek email ("I need to receive copies of the comments of the weekly sessions of all the PIPs via email.")

        if the employee was progressing favorably during the period in which the

employee was on a PIP, to what extent would NCR retain the employee rather than proceeding to terminate the employee

What is PIP "light" or "lite", referred to by emails dated 4/29/08 from Bruce Schagunn and Brenda Michalek

Why were some employees put on PIP "light" and others regular PIP, including but not limited to

The extent to which those on PIP light were under 40 and those over 40 were put on regular PIP

Who in the 750B work group was put on PIP light during 2008 and 2009, and have any of them been fired ?

The names and ages of those in the 750 region or sub-area who were put on PIP "light" in 2008 and 2009, and have any of them been fired?

**Customer Engineers**

job descriptions

docs reflecting service calls

differing levels, CE1, CE2, CE3 - eliminated in 2005 with pay cut imposed.

differing duties

ATM, Retail, Networking, Proof, Break Fix assistance, First Line, On Site Proof Centers, Financial, Fast Lane

**Criteria for assessing Customer Engineer performance**

SLAs

what was being measured

The fairness or unfairness of relying solely on SLA figures in assessing CE job

9

performance, including but not limited to

Whether SLAs took into account differences in

The duties of CE1 & CE2 employees

The types of the problems addressed by CE1s compared to the types of problems assigned to CE2s, and whether those types of problems were of the same or different difficulties to resolve

Meeting SLA response when having to

travel larger distances between worksites

cover for missing team member

Respond to preferred customer (referred to in the 04/17/08 Aguilar email Critical accounts) when non-preferred call is closer or older than preferred customer

Meeting SLA resolution when addressing problems typically assigned to CE1s compared to those typically assigned to CE2s

**NCR organization and hierarchy**

Job descriptions and organizational charts reflecting the positions held in 2008 by Erick Aguilar, John Foote, John Harvey, Brenda Michalek, Vicki Rennick, Joe Hoyle, Chris Cheadle, Chris Wallace, Bruce Schagunn, Steve Battleson.

Job descriptions for CE1s & CE2s

**Monterey Team which included plaintiff**

how different from other teams in 750B territory - all CE2s?

Understaffing of CE team for Monterey during 2008

Michael Mopier doing Monterey calls during 2008

eight other teams in the territory had failed to meet the SLA targets, 09/05/08 Aguilar

10

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER

Case No. C 09-05917 SBA

email re: August Territory Summary, and 09/05/08 August Territory Summary spreadsheet

Why were the only people fired from 6/27/08 through 4/17/09, Terry Doubt, Michael Knapp, Julio Medina and Hieu Nguyen, all over 50, as per undated NCR list of firings [NCRPROD 00197]

The "extra work" being done by plaintiff according to the 08/20/08 Aguilar email You've Got Points!), "Terry, thanks for all the extra work to support the Monterey area during this difficult times."

The "difficult times" being referred to in the 08/20/08 Aguilar email You've Got Points!), "Terry, thanks for all the extra work to support the Monterey area during this difficult times."

**NCR Management concern over salary expense of CE2s and overtime**

Extent to which having older CEs doing "lower-end repair work is neither productive nor most cost-effective" as reflected by 07/06/01 Henderson email was still a concern in 2007 and 2008

Extent to which NCR management monitored overtime reflected by

    02/12/01 "Regional Technical Specialist" Douglas Fear email re: Unauthorize OT for Sunday 02-11-2001

    10-13-05 Harvey email re_OT approval needed, "New overtime rules as we discussed on our conference call. These rules take effect immediately .."

    09/10/08 Field Operations Director for the Northwest Region John Harvey Important NW Overtime Approval Process effective immediately)

Cost cutting in 2007 and 2008, as reflected by Chris Cheadle's 1/21/08 email in which he noted "I know the organization is tired of cost-cutting; it is hard and unpopular. It is also

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER

Case No. C 09-05917 SBA

necessary when we don't grow," in particular reducing labor expense, in particular that of CEs, including but not limited to

    The extent that a CE's salary, or hourly rate, was in any way considered in determining whether the CE would be either put on PIP, scheduled for termination, or terminated

    The extent that the amount of overtime worked by a CE was in any way considered in determining whether the CE would be either put on PIP, scheduled for termination, or terminated.

**NCR's liability to Terry Doubt for overtime in the *Teeter v. NCR* class action matter**

When NCR first did any calculation, however preliminary, of the amount it might have to pay Terry Doubt in response to the *Teeter v. NCR* class action, ED CV O8-00297-SGL, including but not limited to

    the amount which NCR determined or calculated it might have to pay Terry Doubt, and

    with whom at NCR this information was shared

    A description of all writings and/or ESI reflecting the calculation and with whom at NCR it was shared

For each subsequent calculation prior to September 15, 2008, the date of each such subsequent calculation, of the amount it might have to pay Terry Doubt in response to the *Teeter v. NCR* class action, ED CV O8-00297-SGL, including but not limited to

    the amount which NCR determined or calculated it might have to pay Terry Doubt, and

    with whom at NCR this information was shared.

    A description of all writings and/or ESI reflecting the calculation and with whom

at NCR it was shared

The extent to which any NCR management employees discussed, reflected upon, or speculated as to, any amounts that might have to be paid to CE2s generally, not merely to Terry Doubt, in response to the *Teeter v. NCR* class action, ED CV O8-00297-SGL, including but not limited to

with whom at NCR this information was shared.

A description of all writings and/or ESI reflecting the calculation and with whom at NCR it was shared

**NCR management pressure to terminate employees in 2008**

"Pressure" to get employees off the payroll in 2008 as reflected by 04-18-08 - 05-01-08 Harvey_Michalek_Foote email string containing the comment "**We are getting a lot of pressure to exit the double NI's**", including but not limited to

who was the source of the pressure

what writings reflect the pressure

"marching orders" being referred to in the 04/28/08 Rennick_Michalek_Schagunn email string, including

what were the "marching orders", e.g., to get employees off the payroll.

How were they conveyed, and what documents reflect them.

**NCR knowledge of employee complaints / unfairness of SLAs as sole measure of performance**

the extent to which NCR monitored and/or stayed informed as to contents of postings by employees on NCR internal webpages/websites, such as the 10-29-05 Niehoff posting re_NCR culture ("I am tired of working sixty to ninety hour weeks, while management continues to talk of trimming more people. I do hope and pray that soon, it will become a

requirement for Dayton desk jockeys to spend two weeks down here in the trenches with the rest of us.")

NCR's knowledge of wholesale reliance upon SLAs being an unfair as a measure of performance, including but not limited to

> constructive knowledge from information available to NCR, such as 10-29-05 Niehoff posting
>
> actual knowledge in late 2007, reflected by Chris Cheadle's 11/13/07 email re: Chris Wallace townhall encounter "During Chris Wallace's Town Hall webcast earlier this month, a concern was raised that some Customer Engineers were being told by local management to generate HHT (hand held terminal) calls in order to improve SLAs.")

NCR internal circulation of docs, to which management employees, whether individually or as part of a group or committee, would receive any analysis, summary, digest of employee complaints concerning various subjects, including but not limited to

> CE workload
>
> amount of overtime worked
>
> unfairness of any management assessment of CE's job performance, whether referring to a particular occasion on which employee criticized, or pursuant to employer's established practice of reviewing performance, such as annual evaluation
>
> references to "desk jockey"

**Whether plaintiff was an at-will employee, including but not limited to**

NCR's failure to have included "at-will" language in the employment application it had plaintiff fill out, or any of the papers NCR had plaintiff sign, when hiring him in 1991

JOINT CASE MANAGEMENT STATEMENT
AND [PROPOSED] ORDER

Case No. C 09-05917 SBA

NCR's policies and practices on whether employees would or would not be arbitrarily disciplined or discharged, but instead would be subject to a requirement of cause before being subject to discipline or discharge,

NCR's representations to employees that non-unionized CEs would be treated the same as those in the union, for example the 7/3/08 email concerning NCR's negotiation with the Teamsters, sent on behalf of Chris Cheadle, stating "NCR remains 100% committed to our goal of achieving equal treatment of all Customer Engineers across the U.S."

"grounds for immediate termination" referred to in the 4/2/08 email from Erick Aguilar to John Foote, Bruce Schagunn & John Harvey [NCRPROD 00169], including but not limited to

    what are those grounds

    what writings or ESI list them

the circumstances under which a territory manager's decision to terminate an employee could or might be subject to "reversal" as was referred to in the 4/2/08 email from Erick Aguilar to John Foote, Bruce Schagunn & John Harvey [NCRPROD 00169], including but not limited to

    what are those circumstances

    what writings or ESI list them

    ii.    <u>Defendant's Discovery Plan</u>

Should the Court decide not to enforce the arbitration agreement, Defendant anticipates serving a Request for Production and a set of Special Interrogatories on plaintiff and noticing plaintiff's deposition to commence no later than September 1, 2010.

**9.** **<u>Class Actions</u>**

This is not a class action.

///

**10.   Related Cases**

The parties are not aware of any related cases.

**11.   Relief**

Plaintiff seeks the following relief: (1) general damages; (2) punitive damages; (3) special damages; (4) pre-judgment interest; and (5) costs.

Defendant denies plaintiff is legally entitled to any such relief and seeks its costs of defense.

**12.   Settlement and ADR**

Plaintiff and defendant have complied with ADR Local Rule 3-5 by filing the ADR Certification signed by clients and counsel. On June 3, 2010, the parties participated in a mediation conducted by a court-appointed mediator but were unable to reach a settlement. At this juncture, the parties believe it would be fruitless to participate in further ADR, as their views on the value of the case are too far apart. Also, defendant needs to take plaintiff's deposition before it can participate in further ADR.

**13.   Consent to a Magistrate Judge For All Purposes**

The parties discussed consenting to having a magistrate judge conduct all further proceedings including trial and entry of judgment but have not been able to reach agreement on this point.

**14.   Other References**

At this time, the parties do not recommend referring this case to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.   Narrowing of Issues**

Defendant submits that the issues in this case may be narrowed by a motion for judgment on the pleadings or a motion for summary judgment, or in the alternative, partial summary judgment. The parties are unaware of any other means to narrow the issues at this time.

**16.   Expedited Schedule**

The parties are unaware of any means to expedite or to streamline the process at this time. As stated above, defendant may move to bifurcate liability and damages at trial or arbitration.

17. **Scheduling**

In the event the Court denies defendant's motion to compel enforcement of the parties' arbitration agreement, the parties propose the following schedule:

| | |
|---|---|
| a. Last day to file motion to amend complaint | September 15, 2010 |
| b. Non-expert discovery cut-off | January 28, 2011 |
| c. Hearing on dispositive motions | March 25, 2011 |
| d. Designation of experts | May 27, 2011 |
| e. Pre-trial conference | July 15, 2011 |
| f. Trial | August 1, 2011 |

18. **Trial**

Plaintiff has demanded a jury trial. At this time, the parties estimate a trial will last approximately seven (7) full court days. The parties are unaware of any means to expedite or to streamline the process at this time apart from defendant's motion to compel arbitration.

19. **Disclosure of Non-Party Interested Entities or Persons**

Defendant has filed a Certification of Interested Entities or Persons. The interested Parties include NCR Corporation and Terry Doubt.

DATED: June 18, 2010

Respectfully submitted,

By _____
John Elson
Attorney for Plaintiff
TERRY DOUBT

DATED: June 18, 2010

Respectfully submitted,

JACKSON LEWIS LLP

By _____
John M. Cowden
S. Christine Young
Attorneys for Defendant
NCR CORPORATION

## CASE MANAGEMENT ORDER

The Joint Case Management Statement and Proposed Order incorporating plaintiff's discovery plan/defendant's discovery plan is hereby adopted by the Court as the Case Management Order for the case and the Parties are ordered to comply with this Order.

In addition, the Court orders:

Dated: _____

HON. SAUNDRA B. ARMSTRONG
UNITED STATES DISTRICT COURT JUDGE