UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TERRY DOUBT, | Case No:  C 09-05917  SBA |
| Plaintiff, | |
| vs. | **ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| NCR CORPORATION, | [Docket 10] |
| Defendant. | |

Plaintiff brings this wrongful termination action against Defendant.  The parties are presently before the Court on Defendant's Motion to Compel Arbitration of Plaintiff's claims. (Docket 10.)  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

I.   **BACKGROUND**

   A.   **FACTUAL BACKGROUND**

Plaintiff began working for Defendant NCR Corporation ("Defendant" or "NCR") in October 1991.  Reed Decl., ¶ 3.  In 1996, Defendant enacted the Addressing Concerns Together ("ACT") policy.  Id., ¶ 4.  The ACT policy set forth a three-step conflict resolution process for Defendant's employees that required certain disputes that could not be resolved internally to be arbitrated by a neutral private party.  Id.  A letter and brochure was sent to all NCR employees to introduce and explain the ACT policy.  Id.  On November 22, 2002, Defendant replaced the ACT policy with a two-step conflict resolution process called Internal Dispute Resolution (the "IDR policy").  Id., ¶ 5.  The IDR policy became effective on November 22, 2002 for all employees, including Plaintiff, and remains in effect to this date.

Id., ¶ 6.  By its terms, the IDR policy "defines the process for resolving any employment-related disputes that may arise between NCR and its employees."  Id., ¶ 7, Ex. C at 4.

Also on November 22, 2002, Wilbert Buiter, Defendant's Senior Vice President of Human Resources, sent all employees an e-mail announcing the new IDR policy.  Id., Ex. B. The e-mail informed employees that the ACT policy was being replaced by the IDR policy to streamline the process for resolving problems in the workplace.  Id.  Buiter informed employees that more detailed information would follow in the coming weeks, but that step one involved the continued open-door policy wherein an employee could discuss the problem with management, and step two involved binding arbitration before a neutral arbitrator consistent with the terms of the IDR policy.  Id.  Buiter's e-mail included a document entitled "Questions & Answers About Internal Dispute Resolution at NCR" ("Q & A document"), which dedicated four out of nine pages to clarifying the arbitration process.  Id., Ex. C at 40.  Defendant's employees were instructed that they did not have to sign anything in order to accept the terms or conditions of the IDR policy.  Id., ¶ 11.  Instead, employees were informed that, pursuant to the terms of the IDR policy, acceptance would be demonstrated through continued employment and/or acceptance of employment-related benefits.  Id., ¶¶ 10-11.

Following Buiter's e-mail, the full text of the IDR policy was posted on Defendant's intranet and became accessible to all employees, including Plaintiff.  Id., ¶ 13.  With respect to its scope, the IDR policy states that it is to "be used to address most workplace concerns, including, but not limited to, concerns involving … involuntary termination … [and] treatment that is perceived as unequal or discriminatory."  Id., Ex. C at 2.  Also, the IDR policy provides that "[t]he agreement to arbitrate disputes arising during the course of employment remains in force even when an employee's employment with the company is (voluntarily or involuntarily) terminated."  Id. at 4.  However, the IDR policy states that the following categories of disputes are exempt from arbitration "[d]ue to legal and policy considerations": (a) disputes "to challenge the terms of company policy or rule or to challenge an established business/personnel practice" (emphasis in original); (b) disputes arising from workers' compensation or

unemployment insurance; (c) disputes arising from benefits claims; and (d) disputes over confidentiality/non-compete agreements or intellectual property rights.  Id. at 2-3.

The IDR policy requires that arbitration hearings be conducted by the American Arbitration Association (AAA).  Id. at 5.  The arbitration hearings are to be conducted in accordance with AAA rules.  Id.  However, the IDR policy limits the AAA rules with respect to discovery.  Both sides are permitted to take the depositions of only two individuals, as well as the depositions of any expert witnesses expected to testify at the hearing.  Id.  No other discovery is permitted unless the arbitrator finds a "compelling need to allow it."  Id.  The policy provides: "In determining whether a compelling need exists, the arbitrator will balance the interests of fairness and expediency; the arbitrator will only override the goal of achieving a prompt and inexpensive resolution to the dispute if a fair hearing is impossible without additional discovery."  Id. at 5-6.

In September 2008, Defendant terminated Plaintiff's employment.

**B.   PROCEDURAL HISTORY**

On September 13, 2009, Plaintiff filed the instant action against Defendant in the California Superior Court, County of Alameda, alleging three claims: (1) age discrimination under Government Code § 12940; (2) retaliation in response to complaints concerning working conditions under Cal. Labor Code § 6410-6411; and (3) retaliation in response to complaints concerning violations of law under Cal. Labor Code § 1102.5.

In December 2009, Defendant filed its answer asserting its right to arbitrate as an affirmative defense.  On December 14, 2009, Defendant requested that Plaintiff stipulate to binding arbitration pursuant to the IDR policy.  Cowden Decl., ¶ 5.  Plaintiff responded stating he would not stipulate because he believed the arbitration policy was unenforceable.  Id., ¶ 6.  On December 17, 2009, Defendant filed a notice of removal to this Court based on diversity jurisdiction, and on February 16, 2010, Defendant filed the instant motion to compel arbitration.

After the close of briefing on Defendant's motion, Plaintiff filed an "Ex Parte Application for Leave to File Notice of Additional Authority to Be Relied Upon by Plaintiff,"

providing "notice" that Plaintiff intends to rely on Fitz v. NCR Corp., 118 Cal.App.4th 702 (2004) during any oral argument on this motion.  Fitz was not cited by the parties in their papers on this motion.  In Fitz, the California Court of Appeals found unenforceable, in the context of a wrongful termination suit, an arbitration agreement of Defendant that is similar to the one at issue here.  Specifically, that agreement was Defendant's 1996 ACT policy discussed herein, as it was amended in 2000.  Id. at 709.[1]  The agreement in Fitz also limited discovery to the depositions of two lay witnesses and any expert witnesses, absent a showing that a fair hearing would be impossible without additional discovery.  Id. at 716.  The policy in Fitz also exempted the same types of disputes from arbitration as those exempted here --  in particular, disputes over confidentiality/non-compete agreements or intellectual property rights, disputes arising from workers' compensation or unemployment insurance claims, and discrimination claims filed with a state or federal agency.  Id. at 709.

Therefore, this Court requested, and the parties submitted, additional briefing on the application of Fitz to the instant case.

## II.   LEGAL STANDARD

The Federal Arbitration Act (FAA) permits a party to seek an order compelling arbitration in "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under Title 28 ... of the subject matter of a suit arising out of the controversy between the parties."  9 U.S.C. § 4.  A party seeking an order to compel arbitration will allege as an independent basis of federal jurisdiction either a federal question under 28 U.S.C. § 1331, or diversity of citizenship under 28 U.S.C. § 1332(a).  Northport Health Services of Arkansas, LLC v. Rutherford, 605 F.3d 483, 486 (9th Cir. 2010).

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA applies to arbitration provisions of employment contracts.  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001).  Federal policy favors arbitration.  Gilmer v.

---

[1] In its supplemental brief, Defendant describes the IDR policy at issue in Fitz as "an earlier version of the IDR policy at issue here …."  Def.'s Further Brief. at 1.

1    Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (reasoning that the FAA "manifest[s] a

2    'liberal federal policy favoring arbitration agreements.'") (internal quotations omitted).  "The

3    court's role under the Act is therefore limited to determining (1) whether a valid agreement to

4    arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. … If

5    the response is affirmative on both counts, then the Act requires the court to enforce the

6    arbitration agreement in accordance with its terms."  Chiron Corp. v. Ortho Diagnostic Sys.,

7    Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

8          However, arbitration agreements are not always valid.  Davis v. O'Melveny & Myers,

9    485 F.3d 1066, 1072 (9th Cir. 2007).  "In assessing whether an arbitration agreement or clause

10   is enforceable, the Court should apply ordinary state-law principles that govern the formation

11   of contracts."  Id.  (internal quotations omitted).  Under California law, a contractual clause is

12   unenforceable if it is both procedurally and substantively unconscionable.  Id. (citing

13   Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83 (2000)).  Courts apply a

14   sliding scale: "the more substantively oppressive the contract term, the less evidence of

15   procedural unconscionability is required to come to the conclusion that the term is

16   unenforceable, and vice versa."  Armendariz, 24 Cal.4th at 114.  Still, "both [must] be present

17   in order for a court to exercise its discretion to refuse to enforce a contract or clause under the

18   doctrine of unconscionability."  Id.

19   **III.    DISCUSSION**

20         Plaintiff opposes Defendant's motion on two grounds: (1) an agreement to arbitrate

21   does not exist because Plaintiff did not consent to the IDR policy; and (2) if the Court finds that

22   an agreement does exist, the IDR policy is unenforceable because it is procedurally and

23   substantively unconscionable.  Each of those arguments is addressed in turn.

24         **A.    PLAINTIFF CONSENTED TO THE IDR POLICY**

25         When Defendant implemented the IDR policy, it did so by providing its employees with

26   a memorandum and the Q & A document.  The memorandum informed Plaintiff that his

27   continued employment and acceptance of employment-related benefits conveyed acceptance of

28   the IDR policy.  The full text of the IDR policy was posted on Defendant's intranet and was

1  accessible to all employees, including Plaintiff.  Plaintiff did not sign any agreement, yet

2  Defendant maintains that by continuing his employment, Plaintiff impliedly accepted the IDR

3  policy.

4        General principles of contract law determine whether the parties have entered an

5  agreement to arbitrate.  Craig v. Brown & Root, Inc., 84 Cal.App.4th 415, 421 (2000).  "This

6  means that a party's acceptance of an agreement to arbitrate may be express ... or implied-in-

7  fact where … the employee's continued employment constitutes her acceptance of an

8  agreement proposed by her employer ...."  Id. (internal citations omitted).  For instance, in

9  Craig, the appellate court upheld the trial court's finding that, in a wrongful termination case,

10  there was sufficient evidence of an agreement to arbitrate between the plaintiff and the

11  defendant, her former employer.  The Craig court found that plaintiff agreed to be bound by the

12  terms of the dispute resolution program, including its provision for binding arbitration, where

13  the evidence showed that the plaintiff received, in 1993 and again in 1994, a memorandum and

14  brochure containing the arbitration agreement, and the plaintiff continued her employment with

15  defendant until 1997.  Id. at 416;  see also DiGiacinto v. Ameriko-Omserv Corp., 59

16  Cal.App.4th 629, 637 (1997) ("as a matter of law, an at-will employee who continues in the

17  employ of the employer after the employer has given notice of changed terms or conditions of

18  employment has accepted the changed terms and conditions."). [2]

19        Here, the facts indicate that Plaintiff assented to the IDR policy, including the

20  arbitration agreement.  Defendant provided notice of the policy change through the

21  memorandum and the Q & A document, and posted the full language of the policy on its

22  intranet for employees.  Plaintiff subsequently continued his employment with Defendant for

23  several years. Thus, this Court finds that Plaintiff and Defendant entered into an arbitration

24  agreement.

25        In support of his argument that no agreement exists, Plaintiff relies on Badie v. Bank of

26  America, 67 Cal.App.4th 779 (1998).  However, Plaintiff's reliance is misguided.  In Badie, the

27  plaintiffs, who were account holders of Bank of America, brought an action challenging the

28

[2] Plaintiff does not dispute in his papers that he was an at-will employee.

1   validity of an alternative dispute resolution (ADR) clause, which the bank sought to add to

2   existing account agreements by sending its customers a "bill stuffer" insert with their monthly

3   account statement, notifying them of the new ADR clause.  Id. at 783.  Applying ordinary state

4   law principles that govern the formation and interpretation of contracts, the court held there

5   was no mutual assent, and therefore the ADR clause was unenforceable.

6          Badie is factually distinguishable from the instant case.  In Badie, the Bank was

7   permitted, through a contractual provision, to unilaterally change the terms of the account

8   agreements by providing notice to the account holders.  However, the court concluded that the

9   customers consent to this provision did not include consent to the addition of the ADR clause,

10  which was a term different in kind from the terms and conditions contained in the original

11  customer account agreement.  See id. at 803 ("[A]fter analyzing the credit account agreements

12  in light of the standard canons of contract interpretation, we conclude that when the account

13  agreements were entered into, the parties did not intend that the change of terms provision

14  should allow the Bank to add completely new terms such as an ADR clause simply by sending

15  out a notice.").  This concern is not relevant here.  Defendant and Plaintiff had maintained an

16  at-will employment relationship, which Defendant unilaterally modified by enacting the IDR

17  policy.  See, e.g., DiGiacinto, 59 Cal.App.4th at 639 (concluding that an employer's letter

18  reducing plaintiff's pay rate "constitute[d] the employer's notice of termination of the old at-

19  will employment contract and an offer of a unilateral contract under new terms.").

20         Also, the Badie court further held the ADR clause invalid because the plaintiffs were

21  not given reasonable notice.  Id. at 806-07 ("The wording of the bill stuffer itself is far from the

22  direct, clear and unambiguous language required to alert a customer that by maintaining the

23  status quo he or she is waiving an important constitutional right.").  "The notice contained in

24  the bill stuffer was not designed to achieve knowing consent."  Id. at 805 (internal quotation

25  marks omitted).  That is not the case here.  Defendant provided Plaintiff with reasonable notice

26  of the arbitration policy.  Thus, Badie is not controlling.

27         Having found that an arbitration agreement exists, the Court next considers whether it is

28  unenforceable for being procedurally and substantively unconscionable.

**B.      THE IDR POLICY IS UNENFORCEABLE**

**1.      The IDR Policy Is Procedurally Unconscionable**

"[P]rocedural unconscionability focuses on the oppressiveness of the stronger party's conduct."  Fitz v. NCR Corp., 118 Cal.App.4th 702, 722 (internal citation omitted).  "The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party."  Id. (internal citation omitted).  "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion ...."  Id. (internal citation omitted).  "Even if a party is aware of some of the contractual terms, procedural unconscionability may still be found. When a contract is oppressive, awareness of its terms does not preclude a finding that the arbitration agreement is unenforceable."  Id.

On the question of procedural unconscionability, Fitz is instructive.  In finding the NCR arbitration agreement at issue there procedurally unconscionable, the Fitz court noted:

> Fitz had no opportunity to negotiate the terms of the ACT policy.  Nor did Fitz have a meaningful choice. She could either quit her job of 14 years or agree to the terms by merely remaining employed with NCR for one month after the company informed employees of the policy change.  Few employees are in a position to forfeit a job and the benefits they have accrued for more than a decade solely to avoid the arbitration terms that are forced upon them by their employer.  The ACT policy was presented in a take-it or leave-it manner, and Fitz lacked equal bargaining power.  The facts of this case present a high degree of oppressiveness and, therefore, the ACT policy is procedurally unconscionable.

Id. at 722.  Those same factors apply with equal force here to support a finding of procedural unconscionability.  Plaintiff had no opportunity to negotiate the terms of the IDR policy.  Defendant presented the IDR policy to Plaintiff in a "take-it or leave-it" manner.  Plaintiff was informed that continued employment and receipt of employment-related benefits would amount to assent to its terms.  As in Fitz, those factors show a high degree of oppressiveness.  See also Davis, 485 F.3d at 1073 (finding arbitration agreement procedurally unconscionable under California law, even though employer put no undue pressure on employee to sign agreement, where agreement took effect three months after it was announced regardless of

1   whether employees liked its terms, and employees had no alternative to accepting agreement

2   other than working elsewhere).

3        In its supplemental briefing to address the Fitz decision, Defendant does not argue

4   against a finding of procedural unconscionability.  Rather, Defendant argues only that Plaintiff

5   has failed to show that the IDR policy is substantively unconscionable.  That argument is

6   addressed below.

7              **2.        The IDR Policy Is Substantively Unconscionable**

8        "Substantive unconscionability focuses on overly harsh or one-sided results."  Fitz, 118

9   Cal.App.4th at 723 (internal citation omitted).  "In assessing substantive unconscionability, the

10  paramount consideration is mutuality."  Id. (internal citation omitted).  "This does not mean

11  that parties may not choose to exclude particular types of claims from the terms of arbitration."

12  Id.   However, "an arbitration agreement imposed in an adhesive context lacks basic fairness

13  and mutuality if it requires one contracting party, but not the other, to arbitrate all claims

14  arising out of the same transaction or occurrence or series of transactions or occurrences."  Id.

15  (internal citation omitted).  An agreement may be unfairly one-sided if it compels arbitration of

16  the claims more likely to be brought by the weaker party but exempts from arbitration the types

17  of claims that are more likely to be brought by the stronger party.  Armendariz, 24 Cal.4th at

18  119.

19       In Fitz, the court found the NCR policy at issue there to be substantively

20  unconscionable based on two factors.  First, the policy was not mutual, as it exempted trade

21  secret, noncompetition, and intellectual property disputes, which are claims more likely to be

22  brought by NCR, the stronger party.  Id. at 725.[3]  Second, the discovery provision in the policy

23  was insufficient because it did not provide the plaintiff, the weaker party, with sufficient

24  discovery to vindicate her claims.  Id. at 726.  In so finding, the Fitz court noted: "[g]iven the

25

26       [3] See also Davis, 485 F.3d at 1080 (applying California law, finding that employer law
27  firm's non-mutual provision exempting it from arbitration for "claims by the Firm for
    injunctive and/or other equitable relief for violations of the attorney-client privilege or work
28  product doctrine or the disclosure of other confidential information" rendered arbitration
    agreement substantively unconscionable).

complexity of employment disputes, the outcomes of which are often determined by the

testimony of multiple percipient witnesses, as well as written information about the disputed

employment practice, it will be the unusual instance where the deposition of two witnesses will

be sufficient to present a case."  Id. at 717.  That court also observed that plaintiff "will also

have to gain the arbitrator's approval to access any written information regarding NCR's

employment practices."  Id.  Lastly, the court noted: "[g]ranting the arbitrator discretion to

determine whether additional discovery is necessary … is an inadequate safety valve.  In

deciding whether to allow additional discovery, the arbitrator is constrained by an

'impossibility' standard."  Id.

        As indicated, the IDR policy here exempts the same types of claims from arbitration and

contains the same limitations on discovery as the agreement in Fitz.  Nevertheless, Defendant

argues that the IDR policy should be found enforceable as "mutual" because the Fitz court

failed to mention that the NCR policy there, like the one here, also allows employees to

challenge the terms of NCR's polices and business practices in a judicial forum.  Regardless of

whether Fitz court mentioned that specific provision in its written decision, Defendant's

argument that such a provision shows "mutuality" is not persuasive.  The fact remains that the

IDR policy requires arbitration of claims more likely to be brought by the weaker party, such as

the wrongful termination and employment discrimination claims at issue here.[4]

        Defendant further attempts to distinguish Fitz on the ground that Federal Rule of Civil

Procedure 26, which was not available to the state court plaintiff in Fitz, provides for

"significantly greater access to documents and information" by requiring initial disclosures.  As

correctly noted by Plaintiff, that argument fails for the obvious reason that if arbitration is

compelled, Plaintiff will not have the discovery available to him in arbitration that is given to

him as a matter of right by Rule 26, but instead will only obtain such discovery if Plaintiff can

demonstrate to the arbitrator that a fair hearing would be "impossible" without it.  Moreover,

_____

        [4] Defendant also argues that the IDR policy requires it "to arbitrate other claims it may
have against employees, including embezzlement and theft."  However, Defendant has not cited
(nor could this Court find) any provision of the IDR policy supporting that assertion.

1 Rule 26 only requires disclosure of information that supports a party's claims or defenses, and

2 does not require disclosure of adverse information.  See Fed. R. Civ. P. 26(a)(1)(A).

3       Lastly, Defendant's reliance on <u>Dotson v. Amgen, Inc</u>. 181 Cal.App.4th 975 (2010) is

4 misplaced.  There, in considering an arbitration agreement, the court rejected a claim of

5 unconscionability based on a limitation of only one deposition because the employee could

6 obtain additional depositions "upon a showing of need."  <u>Id</u>. at 982.  Moreover, there was no

7 limitation in <u>Dotson</u> on the number of requests for documents, whereas here, there is no right to

8 seek documents unless Plaintiff can demonstrate that a fair hearing would be "impossible"

9 without them.  <u>Id</u>.

10       Accordingly, this Court finds that the IDR policy is both procedurally and substantively

11 unconscionable, and therefore is unenforceable.

12      **C.**     **S**EVERANCE **I**S **N**OT **W**ARRANTED

13       As a final matter, Defendant argues that, should this Court find any portion of the IDR

14 policy to be unfair, it should sever that portion to salvage the balance of the agreement.  The

15 same argument was made and rejected in <u>Fitz</u>.

16       In particular, the <u>Fitz</u> court determined that severance was not appropriate because "the

17 California Supreme Court held that more than one unlawful provision in an arbitration

18 agreement weighs against severance."  <u>Fitz</u>, 118 Cal.App.4th at 726 (citing <u>Armendariz</u>, 24

19 Cal.4th at 124).  As is the case here, the policy in <u>Fitz</u> contained <u>two</u> unlawful provisions: a

20 limitation on discovery that does not provide the weaker party with sufficient opportunity to

21 vindicate his claims, and a lack of mutuality whereby the stronger party has exempted from

22 arbitration the very claims it is likely to bring against employees.  The <u>Fitz</u> court further found

23 severance inappropriate in view of cases holding that "[i]f the central purpose of the contract is

24 tainted with illegality, then the contract as a whole cannot be enforced."  <u>Id</u>. at 727 (citing

25 <u>Armendariz</u>, 24 Cal.4th at 124 and <u>O'Hare v. Municipal Resource Consultants</u>, 107

26 Cal.App.4th 267, 282 ("[s]everance is permissible only if the unconscionable portion is

27 collateral to the main purpose of the contract.")).

28

1    Finally, the Fitz court held that excising the offending provisions of the policy would

2  not be consistent with the reasons for severing objectionable terms as identified by the

3  California Supreme Court.  "Those reasons include: (1) 'conserv[ing] a contractual relationship

4  if to do so would not be condoning an illegal scheme' and (2) 'prevent[ing] parties from

5  gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire

6  agreement.'"  Id. (quoting Armendariz, 24 Cal.4th at 123-124).  Applying those considerations,

7  the Fitz court found "[n]ow that the parties' employment relationship has ended, the first

8  reason does not apply … More importantly, to allow arbitration of Fitz's claim would permit

9  NCR to benefit from the unconscionable agreement it imposed on her."  Id.

10    As in Fitz, the interests of justice here are not furthered by severing the IDR policy

11  exemptions and discovery limitations.  To compel arbitration of Plaintiff's claims would grant

12  an undeserved benefit to Defendant, which drafted the IDR policy as a means to compel

13  arbitration as an inferior forum that works to its advantage.

14    For these reasons, Defendant's request for severance is denied.

15  **IV.    CONCLUSION**

16    For the reasons stated above,

17    IT IS HEREBY ORDERED THAT Defendant's Motion to Compel Arbitration is

18  DENIED.  This order terminates Docket 10.

19    IT IS SO ORDERED.

20  Dated: September 13, 2010              _____

21                          SAUNDRA BROWN ARMSTRONG
                           United States District Judge

22

23

24

25

26

27

28