John Elson SBN 92620
1840 41st Ave.
#102-176
Capitola, CA 95010-2527
831-475-8535 voice
831-475-8532 fax
j_h_elson@yahoo.com

<u>Attorneys for Plaintiff</u>
TERRY DOUBT

UNITED STATES DISTRICT COURT FOR THE NORTHERN

DISTRICT OF CALIFORNIA - OAKLAND

| | |
|---|---|
| TERRY DOUBT,<br>an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>NCR CORPORATION, A Maryland Corporation,<br>and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: C09-05917 SBA<br><br>(Assigned to Judge Saundra B. Armstrong.)<br><br>**MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Action Removed:    December 17, 2009<br>Trial Date:                     None |

1

## INTRODUCTION AND SUMMARY OF ARGUMENT

On July 2, 2010 plaintiff propounded a request for documents under FRCP Rule 34. On August 2nd NCR served its objections, but no documents. A motion to compel was placed before Magistrate Joseph C. Spero by joint letter dated November 5, 2010 (Docket #46), and on November 23, 2010 Magistrate Spero ruled on the issues before him (Docket #47).

Plaintiff now objects to several rulings in the Magistrate's November 23, 2010 order.

As to the Rule 34 demand for documents, plaintiff contends that as a matter of law, defendant NCR's objections failed to be effective due to their omission of any factual bases for the Magistrate to sustain an objection of overbreadth, and for that reason alone the challenged rulings cannot stand; *Aponte-Navedo v. Nalco Chemical Co.* (D.Puerto Rico, 2010) 268 F.R.D. 31, at 36. Plaintiff also contends that if the categories in question were overly broad, the Magistrate should have nonetheless ordered production on a narrowed scope rather than deny plaintiff's motion to compel altogether, *Borse v. Superior Court*[1] (1970) 7 Cal.App.3d 286, at 288.

As to plaintiff's request for leave to take more than ten depositions, plaintiff contends that given the paper trail (Docket #s 46-2, 46-3, 46-4, 46-5, 46-6, 46-7) supporting the facts stated in the November 5, 2010 joint letter (Docket #46, pp. 54-59), good cause was shown why plaintiff should be allowed to take more than ten separate depositions as long as plaintiff consumed no more than 70 hours of depositions in direct examination, as plaintiff had requested.

I

## THOSE PARTS OF THE NOVEMBER 23, 2010 ORDER TO WHICH PLAINTIFF OBJECTS, WHAT PLAINTIFF ASKS THE COURT TO ORDER, AND WHY

Plaintiff objects to the Magistrate's orders concerning discovery in the following respects.

**Page 2, item 5**: **"The Motion to Compel with respect to Request No. 91 is Denied. The request is overbroad. Nonetheless, Defendant shall provide a list showing the number of members of the Monterey workgroup in the 750B territory, monthly, for the twelve (12) months preceding Plaintiff's termination."**

---

[1] California looks to federal decisions when construing its discovery statutes, *So. Ca. Edison Co. v. Superior Court* (1972) 7 Cal. 3d 832, at 839; conversely, state decisions may be relevant to interpretation of the FRCP's discovery provisions in the absence of contrary federal holdings.

2

<u>What the Court should order</u>: Defendant NCR shall produce all documents responsive to category 91 [Jnt.Ltr. p.23]: the 2008 emails, memos, or other pieces of correspondence that refer to or discuss the staffing level of the Monterey workgroup in the 750B team.

<u>Why</u>: Plaintiff's first amended complaint alleges his workgroup was short-staffed to the point that during the months before plaintiff was fired, the normal four person team was merely plaintiff and a new employee plaintiff had to train (Docket # 40, p. 6, ¶27); NCR's answer admits "Plaintiff's work team operated with a reduced number in 2008" but denied the balance of the allegations (Docket # 42, p. 4, ¶27).

This discovery seeks management's knowledge of, and failure to ameliorate, what was a problem beyond plaintiff's control that impacted his ability to meet SLAs (statistical measures of a Customer Engineer's productivity), a severely short-staffed workgroup. This is relevant to plaintiff's contention that failure to meet his SLAs, the reason given for NCR placing plaintiff on performance improvement program [Jnt.Ltr. tab V], and later for terminating him, was merely a pretext.

**Page 2, item 6: "The Motion to Compel with respect to Request Nos. 128 - 130 is Denied. The requests are overbroad"**

<u>What the Court should order</u>: Defendant NCR shall produce emails, memos, other pieces of correspondence or documents responsive to categories 128 through 130 that go up the chain of command from plaintiff's supervisor, Territory Manager Erick Aguilar, through and including the corporate office, which (1) inquired in 2008 about the earnings of, and/or overtime worked by, a CE whom NCR was thinking of putting on PIP, scheduling for termination, or firing (category 128 [Jnt.Ltr. p. 24]), (2) responded to any inquiry about the earnings of, and/or overtime worked by, a CE whom NCR was thinking of putting on PIP, scheduling for termination, or firing (category 129 [Jnt.Ltr. p. 27]), and (3) refer to or discuss reducing labor expense of CEs as part of any cost cutting in 2007 or 2008 (category 130 [Jnt.Ltr. p. 29]).

<u>Why</u>: plaintiff alleges in the first and sixth claims for relief the salary level of CEs was a motivating factor in deciding whether to terminate them, which caused a disparate impact upon older employees in violation of *Govt Code* §12941 [Docket # 40, pp. 7-8, ¶¶ 34-37; p.12, ¶¶ 64-67 ).

This discovery seeks (1) the extent to which NCR considered the salary expense of CEs when deciding whether to discipline or terminate CEs (categories 128&129) and (2) NCR's discussions of

3

CE labor expense in the context of cost-cutting that was going on in 2007 & 2008 (category 130).

**Page 2, item 8: "The Motion to Compel with respect to Request Nos. 133, 134, [] 138, 139, [], 141, and [] are Denied. The requests are overbroad."**

<u>What the Court should order</u>: Defendant NCR shall produce all emails, memos, other pieces of correspondence or documents responsive to categories 133 [Jnt.Ltr. p.35], 134 [Jnt.Ltr. p.36], 138 [Jnt.Ltr. p.39], 139 [Jnt.Ltr. pp.40-41], and 141 [Jnt.Ltr. p.43], that go up the chain of command from plaintiff's supervisor, Territory Manager Erick Aguilar, through and including the corporate office, which are dated prior to September 15, 2008 and reflect

(1) NCR employees or consultants discussing, reflecting upon, or speculating as to amounts that might have to be paid to CE2s as a group as a result of the *Teeter v. NCR* class action (category 133);

(2) with whom at NCR was shared NCR employees' or consultants' discussions, reflections or speculations as to amounts that might have to be paid to CE2s as a group as a result of the *Teeter v. NCR* class action (category 134);

(3) NCR management awareness and/or discussion of the 10-29-05 Adolph C Niehoff posting re: "NCR culture" [Jnt.Ltr. tab I] which contained the statement "**I am tired of working sixty to ninety hour weeks, while management continues to talk of trimming more people**. I do hope and pray that soon, it will become a requirement for Dayton desk jockeys to spend two weeks down here in the trenches with the rest of us" (category 138);

(4) NCR management awareness of, and/or discussion of, the practice that is mentioned in NCR VP Chris Cheadle's 11/13/07 email that "some Customer Engineers were being told by local management to generate HHT (hand held terminal) calls in order to improve SLAs" [Jnt.Ltr. tab N, ¶1] (category 139); and

(5) NCR management awareness in 2008 of, and/or discussion of, the amount of overtime being worked by Customer Engineers in 2008 (category 141)

<u>Why</u>: As to categories 133 & 134, plaintiff's first amended complaint specifically alleges at paragraphs 51-54 that one of the motivating reasons for NCR's termination of his employment was learning of the *Teeter* case in April of 2008, and wishing to be rid of those employees, like plaintiff, to whom NCR would have to pay a significant sum as a result of the claim having been brought (Docket #40, pp. 10-11). This discovery seeks NCR management awareness of the possible amount

4

NCR might have to pay (category 133) and with whom in the company that awareness was shared (category 134).

As to category 138, plaintiff's first amended complaint asserts in the third claim for relief that he was retaliated against for having voiced complaints concerning working conditions (Docket #40, pp. 9-10, ¶¶44-47). Evidence reflecting similar complaints from other workers, and NCR's awareness of, or reactions to, them are inarguably relevant to the claims or defenses in this action as evidence of motive, and to show the context of later events, *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara* (9th Cir., 2003) 344 F.3d 822, at 829, *United Air Lines, Inc. v. Evans* (1977) 431 U.S. 553, at 558, 97 S.Ct. 1885, at 1889, 52 L. Ed.2d 571.

As to category 139, caselaw makes clear plaintiff must be allowed to show that the employer's proffered reason for the termination is untrue, "The plaintiff must be given the opportunity to introduce evidence that the proffered justification is merely a pretext for discrimination," *Furnco Const. Corp. v. Waters* (1978) 438 U.S. 567, at 578, 98 S.Ct. 2943, at 2950, 57 L.Ed.2d 957, and one way of proving pretext is "by showing that the employer's proffered explanation is unworthy of credence," *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, at 143, 120 S.Ct. 2097, 147 L.Ed.2d 105. In this case, that means showing that SLAs were such an unrealistic measure of CE performance that not only did a Territory Manager tell a CE to create a false service call record to boost the CE's SLAs, which is relevant to NCR's purported legitimate reason for firing plaintiff, but also that Senior NCR management was aware of this practice and continued to use SLAs as a basis for firing employees, which is therefor relevant to plaintiff's claim for punitive damages, i.e, showing malice or oppression as is required under California law.

As to category 141, plaintiff's first amended complaint alleges in the fifth claim for relief that plaintiff was fired in violation of public policy because he had been required to work so much overtime which NCR resented (Docket #40, p. 11, ¶¶ 57-61). This discovery seeks management awareness of the amount of overtime plaintiff had put in due to the workload and short-staffed condition of his workgroup.

**Page 3, item 14: "Plaintiff's request to take more than ten (10) depositions is Denied."**

<u>What the Court should order</u>: Plaintiff may take more than ten depositions as long as plaintiff does not consume more than seventy (70) hours in direct examination of the deponents.

<u>Why</u>: Plaintiff has shown that there are more than ten witnesses involved in the pertinent events in this case, and Rule 30(a)(2) provides that "the court *must* grant leave to the extent consistent with Rule 26(b)(2)" to depose more than ten witnesses if good cause is shown.

## II

## WHY THE MAGISTRATE ERRED

A. <u>The appropriate standards of review</u>.

While a magistrate judge's order will be upheld unless it is "clearly erroneous or contrary to law," FRCP Rule 72(a); 28 U.S.C. § 636(b)(1)(A), "the 'contrary to law' standard permits independent review of purely legal determinations by a magistrate judge," *Computer Economics, Inc. v. Gartner Group, Inc.* (S.D. CA, 1999) 50 F.Supp.2d 980, at 983. "Thus, the district court should exercise its independent judgment with respect to a magistrate judge's legal conclusions," *ibid*.

Here, as a matter of law, NCR's failure to timely proffer *any colorable factual claim* supporting the mantra of overbreadth is fatal to the Magistrate's reliance upon overbreadth as a basis for denial of discovery.

As reference to NCR's initial objections to plaintiff's demand reveals, when responding to the categories which are the subject of the within objection to the Magistrate's rulings, after NCR objected on the ground the motion to compel arbitration was pending, NCR's rote stated "Defendant further objects to this request on the grounds it is overly broad, is unduly burdensome, seeks irrelevant documents. . .": category 91 [Jnt.Ltr. p. 23], category 128 [Jnt.Ltr. p. 24], category 129 [Jnt.Ltr. p. 27], category 130 [Jnt.Ltr. p. 29], category 133[ Jnt.Ltr. p. 35], category 134 [Jnt.Ltr. pp. 36-37], category 138 [Jnt.Ltr.p. 39], category 139 [Jnt.Ltr. p. 41], and category 141 [Jnt.Ltr. p. 44]).

NCR's purported objections on the ground of overbreadth were inadequate as a matter of law. As the Court noted in *Aponte-Navedo v. Nalco Chemical Co.* (D.Puerto Rico, 2010) 268 F.R.D. 31:

It is well settled that:

> [t]he party resisting production bears the burden of establishing lack of relevancy or undue burden.... [T]he **"mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection."** ... **"On the contrary, the party resisting discovery must show specifically how ... each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.'"**

*Aponte-Navedo* at 36 [ bracketed language in original], quoting from *Sánchez-Medina v. UNICCO Serv. Co.* (D.P.R.2009) 265 F.R.D. 24, 27, which had quoted *St. Paul Reinsurance Co. v. Commercial Fin. Corp.* (N.D.Iowa 2000) 198 F.R.D. 508, 511-12.

NCR made no effort in its initial response to plaintiff's demand to explain how or why plaintiff's requests were either irrelevant, or unduly burdensome, or overly broad; NCR merely asserted baldly that each request "is overly broad, is unduly burdensome, seeks irrelevant documents."

Moreover, to be effective, the objections must be timely. As the Ninth Circuit has noted, " It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection," *Richmark Corp. v. Timber Falling Consultants* (9th Cir., 1992) 959 F.2d 1468, at 1473.

By failing to interpose timely responses that satisfied the well settled requirement of more than rank boilerplate, NCR waived objections of overbreadth, and the Magistrate was without the power to sustain the objections on that basis; moreover, NCR has made no effort to seek relief from its failure to provide legally sufficient objections within the time allowed by Rule 34, so that NCR's afterthoughts proffered in opposition to plaintiff's motion to compel are of no consequence.

B.     The scope of permissible discovery which the Magistrate's ruling ignored.

Courts have repeatedly held that "It is well settled that information concerning an employer's general employment practices is relevant even to a title VII individual disparate impact claim," *Briddell v. Saint Gobain Abrasives Inc.* (D.Mass.,2005) 233 FRD 57, at 59, quoting from *Glenn v. Williams* (D.D.C.2002) 209 F.R.D. 279, 282. The Court in *Briddell* also noted, "evidence of a pattern of behavior is relevant to discrimination claims" which would also be "relevant with respect to St. Gobain's Seventh Affirmative Defense, that it, 'at all material times made good faith efforts to comply with its obligations under the federal employment discrimination statutes,' " (*ibid.*).

Here, NCR alleges in its second affirmative defense that plaintiff's claims are barred "because NCR exercised reasonable care to prevent and correct discriminatory behavior" (Docket #42, p. 9, lines 19-20). NCR's third affirmative defense alleges plaintiff's claims are barred "because NCR's actions were a just and proper exercise of management discretion" and "were based on legitimate non-discriminatory and non-retaliatory business reasons" (*ibid.*, p.9, line 27, p. 10, line 1).

In *Briddell* the employer argued that compliance with the document production requests "would take 175-200 hours and cover 700-800 employees" (233 F.R.D. at 61), but the court nonetheless ordered

7

that production take place (*ibid.*).

Here, NCR's arguments are barren of any showing of what would be required to comply with any of plaintiff's requests. Absent a factual showing, the Magistrate had no discretion to deny discovery that was facially relevant to the parties' claims or defenses on the basis of burden or oppression, *Singer v. Superior Court* (1960) 54 Cal.2d 318, at 327 (without an evidentiary showing of burden or oppression, there is no discretion to limit discovery based upon a bald claim of same).

C. <u>Even if a claim of overbreadth were properly made out, the Magistrate abused his discretion in denying discovery completely instead of ordering the scope of the requests be narrowed.</u>

In *Borse v. Superior Court* (1970) 7 Cal.App.3d 286 the Court of Appeal issued its writ directing the trial court to enter an order allowing some discovery after it had denied plaintiff's motion to compel on the grounds the interrogatories had been overbroad. In doing so the court noted, "In denying discovery completely, the trial court failed to comply with the liberal discovery policies. . ." (7 Cal.App.3d at 289).

Federal practice contemplates a similar approach, "An objection to part of a request must specify the part and permit inspection of the rest," Rule 34(b)(2)(C).

D. <u>Plaintiff's showing justifies allowing him to take more than ten depositions as long as plaintiff consumes no more than 70 hours in direct examination.</u>

Rule 30(a)(2)(A)(i) allows for only ten depositions as a matter of right, 30(d)(1) provides that a deposition is one day of seven hours.

Plaintiff's evidentiary showing entailed some 40 exhibits documenting the events leading up to his termination, and why it was wrongful; there are a good deal more than ten witnesses to these events. Defendant NCR proffered no reason why allowing plaintiff more than ten depositions, as long as no more than 70 hours, was a problem, yet the Magistrate summarily denied plaintiff's request, despite the command in Rule 30(a)(2) that "the court *must* grant leave to the extent consistent with Rule 26(b)(2)."

Here, given the number of witnesses necessary to prove the facts supporting plaintiff's claims, or to prove NCR's proffered reason for the termination, failure to meet his SLAs, was pretextual, substantially exceeds ten, so that good cause is present for the Court to allow plaintiff as many depositions as necessary as long as plaintiff consumes no more than 70 hours in direct examination.

Dated: January 7, 2011   JOHN ELSON, Attorney at Law
Attorney for Plaintiff TERRY DOUBT

8