John Elson SBN 92620
1840 41st Ave.
#102-176
Capitola, CA  95010-2527
831-475-8535 voice
831-475-8532 fax
j_h_elson@yahoo.com

Attorneys for Plaintiff
TERRY DOUBT

# UNITED STATES DISTRICT COURT FOR THE  NORTHERN

# DISTRICT OF CALIFORNIA - OAKLAND

| | |
|---|---|
| TERRY DOUBT,<br>an individual,<br><br>                  Plaintiff,<br><br>        v.<br><br>NCR CORPORATION, A Maryland Corporation,<br>and DOES 1 through 100, inclusive,<br><br>                  Defendants. | Case No.: C09-05917 SBA<br><br>(Assigned to Judge Saundra B. Armstrong.)<br><br>**[PROPOSED] ORDER ON PLAINTIFF'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Action Removed:        December 17, 2009<br>Trial Date:                              None |

On July 2, 2010 plaintiff propounded a request for documents under FRCP Rule 34. On August 2nd NCR served its objections, but no documents. A motion to compel was placed before Magistrate Joseph C. Spero by joint letter dated November 5, 2010 (Docket Item #46), and on November 23, 2010 Magistrate Spero ruled on the issues before him (Docket Item #47).

Plaintiff has objected to several rulings in the Magistrate's November 23, 2010 order.

As to the Rule 34 demand for documents, plaintiff contends that as a matter of law, defendant NCR's objections failed to be effective due to their omission of any factual bases for the Magistrate to sustain an objection of overbreadth, and for that reason alone the challenged rulings cannot stand; *Aponte-Navedo v. Nalco Chemical Co.* (D.Puerto Rico, 2010) 268 F.R.D. 31, at 36.  Plaintiff also contends that if the categories in question were overly broad, the Magistrate should have nonetheless

1

ordered production on a narrowed scope rather than deny plaintiff's motion to compel altogether, *Borse v. Superior Court*[1] (1970) 7 Cal.App.3d 286, at 288.

As to plaintiff's request for leave to take more than ten depositions, plaintiff contends that given the paper trail (Docket Item #s 46-2, 46-3, 46-4, 46-5, 46-6, 46-7) supporting the facts stated in the November 5, 2010 joint letter (Docket Item #46, pp. 54-59), good cause was shown why plaintiff should be allowed to take more than ten separate depositions as long as plaintiff consumed no more than 70 hours of depositions in direct examination, as plaintiff had requested.

The Court has considered plaintiff's objections, defendant's opposition, and plaintiff's reply, and the Court now rules as follows.  With regard to NCR's objections of overbreadth, the Court rejects them for the following reasons.

While a magistrate judge's order will be upheld unless it is "clearly erroneous or contrary to law," FRCP Rule 72(a)*;* 28 U.S.C. § 636(b)(1)(A), "the 'contrary to law' standard permits independent review of purely legal determinations by a magistrate judge," *Computer Economics, Inc. v. Gartner Group, Inc.* (S.D. CA, 1999)  50 F.Supp.2d 980, at 983.  "Thus, the district court should exercise its independent judgment with respect to a magistrate judge's legal conclusions," *ibid*.

Here, as a matter of law, NCR's failure to timely proffer *any colorable factual claim* supporting the mantra of overbreadth is fatal to the Magistrate's reliance upon overbreadth as a basis for denial of discovery.  As reference to NCR's initial objections to plaintiff's demand reveals, when responding to the categories which are the subject of the within objection to the Magistrate's rulings, after objecting on the ground that the motion to compel arbitration was pending, NCR's rote stated "Defendant further objects to this request on the grounds it is overly broad, is unduly burdensome, seeks irrelevant documents. . ."

NCR's purported objections on the ground of overbreadth were inadequate as a matter of law.  As the Court noted in *Aponte-Navedo v. Nalco Chemical Co.* (D.Puerto Rico, 2010) 268 F.R.D. 31:

It is well settled that:

[t]he party resisting production bears the burden of establishing lack of relevancy or undue burden.... [T]he **"mere statement by a party that the interrogatory [or request for**

---

[1]  California looks to federal decisions when construing its discovery statutes, *So. Ca.  Edison Co. v. Superior Court* (1972) 7 Cal. 3d 832, at 839; conversely, state decisions may be relevant to interpretation of the FRCP's discovery provisions in the absence of contrary federal holdings.

**production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." ... "On the contrary, the party resisting discovery must show specifically how ... each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.' "**

*Aponte-Navedo* at 36 [ bracketed language in original], quoting from *Sánchez-Medina v. UNICCO Serv.*

*Co.* (D.P.R.2009) 265 F.R.D. 24, 27, which had quoted *St. Paul Reinsurance Co. v. Commercial Fin. Corp.* (N.D.Iowa 2000) 198 F.R.D. 508, 511-12.

NCR made no effort in its initial response to plaintiff's demand to explain how or why plaintiff's requests were either irrelevant, or unduly burdensome, or overly broad; NCR merely asserted baldly that each request "is overly broad, is unduly burdensome, seeks irrelevant documents."

Moreover, to be effective, the objections must be timely. As the Ninth Circuit has noted, " It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection," *Richmark Corp. v. Timber Falling Consultants* (9th Cir., 1992) 959 F.2d 1468, at 1473. By failing to interpose timely responses that satisfied the well settled requirement of more than rank boilerplate, NCR waived objections of overbreadth, and the Magistrate was without the power to sustain the objections on that basis; moreover, NCR has made no effort to seek relief from its failure to provide legally sufficient objections within the time allowed by Rule 34, so that NCR's afterthoughts proffered in opposition to plaintiff's motion to compel are of no consequence.

Turning to the specific categories in plaintiff's Rule 34 request, the Court rules as follows:

As to category 91, defendant NCR shall produce all responsive documents: the 2008 emails, memos, or other pieces of correspondence that refer to or discuss the staffing level of the Monterey workgroup in the 750B team.

Plaintiff's first amended complaint alleges his workgroup was short-staffed to the point that during the months before plaintiff was fired, the normal four person team was merely plaintiff and a new employee plaintiff had to train (Docket # 40, p. 6, ¶27); NCR's answer admits "Plaintiff's work team operated with a reduced number in 2008" but denied the balance of the allegations (Docket # 42, p. 4, ¶27).

This discovery seeks management's knowledge of, and failure to ameliorate, what was a problem

3

beyond plaintiff's control that impacted his ability to meet SLAs (statistical measures of a Customer Engineer's productivity), a severely short-staffed workgroup. This is relevant to plaintiff's contention that failure to meet his SLAs, the reason given for NCR placing plaintiff on performance improvement program [Jnt.Ltr. tab V], and later for terminating him, was merely a pretext.

As to categories 128-130, defendant NCR shall produce emails, memos, other pieces of correspondence or documents responsive to categories 128 through 130 that go up the chain of command from plaintiff's supervisor, Territory Manager Erick Aguilar, through and including the corporate office, which

(1) inquired in 2008 about the earnings of, and/or overtime worked by, a CE whom NCR was thinking of putting on PIP, scheduling for termination, or firing (category 128),

(2) responded to any inquiry about the earnings of, and/or overtime worked by, a CE whom NCR was thinking of putting on PIP, scheduling for termination, or firing (category 129), and

(3) refer to or discuss reducing labor expense of CEs as part of any cost cutting in 2007 or 2008 (category 130).

Plaintiff alleges in the first and sixth claims for relief the salary level of CEs was a motivating factor in deciding whether to terminate them, which caused a disparate impact upon older employees in violation of *Govt Code* §12941 [Docket # 40, pp. 7-8, ¶¶ 34-37; p.12, ¶¶ 64-67 ). This discovery seeks (1) the extent to which NCR considered the salary expense of CEs when deciding whether to discipline or terminate CEs (categories 128&129) and (2) NCR's discussions of CE labor expense in the context of cost-cutting that was going on in 2007 & 2008 (category 130).

As to categories 133, 134, 138, 139, and 141, defendant NCR shall produce all emails, memos, other pieces of correspondence or documents responsive to categories 133, 134, 138, 139, and 141, that go up the chain of command from plaintiff's supervisor, Territory Manager Erick Aguilar, through and including the corporate office, which are dated prior to September 15, 2008 and reflect

(1) NCR employees or consultants discussing, reflecting upon, or speculating as to amounts that might have to be paid to CE2s as a group as a result of the *Teeter v. NCR* class action (category 133);

(2) with whom at NCR was shared NCR employees' or consultants' discussions, reflections or speculations as to amounts that might have to be paid to CE2s as a group as a result of the

4

*Teeter v. NCR* class action (category 134);

(3)  NCR management awareness and/or discussion of the 10-29-05 Adolph C Niehoff posting re:  "NCR culture" which contained the statement "**I am tired of working sixty to ninety hour weeks, while management continues to talk of trimming more people**. I do hope and pray that soon, it will become a requirement for Dayton desk jockeys to spend two weeks down here in the trenches with the rest of us" (category 138);

(4)  NCR management awareness of, and/or discussion of, the practice that is mentioned in NCR VP Chris Cheadle's 11/13/07 email that "some Customer Engineers were being told by local management to generate HHT (hand held terminal) calls in order to improve SLAs" (category 139); and

(5)  NCR management awareness in 2008 of, and/or discussion of, the amount of overtime being worked by Customer Engineers in 2008 (category 141).

As to categories 133 & 134, plaintiff's first amended complaint specifically alleges at paragraphs 51-54 that one of the motivating reasons for NCR's termination of his employment was learning of the *Teeter* case in April of 2008, and wishing to be rid of those employees, like plaintiff, to whom NCR would have to pay a significant sum as a result of the claim having been brought (Docket #40, pp. 10-11) .  This discovery seeks NCR management awareness of the possible amount NCR might have to pay (category 133) and with whom in the company that awareness was shared (category 134).

As to category 138, plaintiff's first amended complaint asserts in the third claim for relief that he was retaliated against for having voiced complaints concerning working conditions (Docket #40, pp. 9-10, ¶¶44-47). Evidence reflecting similar complaints from other workers, and NCR's awareness of, or reactions to, them are inarguably relevant to the claims or defenses in this action as evidence of motive, and to show the context of later events, *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara* (9ᵗʰ Cir., 2003) 344 F.3d 822, at 829, *United Air Lines, Inc. v. Evans* (1977) 431 U.S. 553, at 558, 97 S.Ct. 1885, at 1889, 52 L. Ed.2d 571.

As to category 139, caselaw makes clear plaintiff must be allowed to show that the employer's proffered reason for the termination is untrue, "The plaintiff must be given the opportunity to introduce evidence that the proffered justification is merely a pretext for discrimination," *Furnco Const. Corp.*

5

*v. Waters* (1978) 438 U.S. 567, at 578, 98 S.Ct. 2943, at 2950, 57 L.Ed.2d 957, and one way of proving pretext is "by showing that the employer's proffered explanation is unworthy of credence," *Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, at 143, 120 S.Ct. 2097, 147 L.Ed.2d 105. In this case, that means showing that SLAs were such an unrealistic measure of CE performance that not only did a Territory Manager tell a CE to create a false service call record to boost the CE's SLAs, which is relevant to NCR's purported legitimate reason for firing plaintiff, but also that Senior NCR management was aware of this practice and continued to use SLAs as a basis for firing employees, which is therefor relevant to plaintiff's claim for punitive damages, i.e, showing malice or oppression as is required under California law.

As to category 141, plaintiff's first amended complaint alleges in the fifth claim for relief that plaintiff was fired in violation of public policy because he had been required to work so much overtime which NCR resented (Docket #40, p. 11, ¶¶ 57-61).  This discovery seeks management awareness of the amount of overtime plaintiff had put in due to the workload and short-staffed condition of his workgroup.

As to plaintiff's request to take more than ten depositions as long as plaintiff does not consume more than seventy hours in direct examination, plaintiff has shown that there are more than ten witnesses involved in the pertinent events in this case, and Rule 30(a)(2) provides that "the court *must* grant leave to the extent consistent with Rule 26(b)(2)" to depose more than ten witnesses if good cause is shown.

Accordingly, plaintiff's request to take more than ten depositions as long as plaintiff does not consume more than seventy hours in direct examination is GRANTED.

Dated:

_____

United States District Court Judge

6