# JOHN ELSON

ATTORNEY AT LAW
1840 41st Ave.
#102-176
Capitola, CA  95010-2527
831-475-8535 voice
johnelson92620@gmail.com

June 25, 2013

Magistrate Judge Joseph C. Spero
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3611



Re:     *Doubt v. NCR*
        *Case #* C09-05917 SBA

Dear Magistrate Judge Spero:                    Dated: 6/27/13

        This letter constitutes

(1)      plaintiff's objection to the adequacy of the proposed search to be undertaken by NCR as per the parties' stipulation on the record on June 14, 2013, and your June 17, 2013 order thereon;

(2)     plaintiff's application for you to supplement your order; and

(3)     plaintiff's application for a further compliance hearing to take place on July 19, 2013, at 9:30am, in your Court.

        In sum, the search NCR has proposed ignores where the documents are likely to be found, and what NCR proposes guarantees that few, if any, of the documents NCR agreed to produce will be produced for the reasons explained below.

## I
## THE DUTY TO SEARCH WHEREVER THE DOCUMENTS MAY BE FOUND

        It is settled that "[a] party responding to a Rule 34 production request ... 'is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control,' "*A. Farber and Partners, Inc. v. Garber* (C.D. Cal. 2006) 234 F.R.D. 186,  at 188, quoting from  *Gray v. Faulkner*  (N.D.Ind.1992) 148 F.R.D. 220, 223.

        In that regard, the responding party must devise and employ " 'a reasonable procedure to distribute discovery requests to all employees and agents of the [party] potentially possessing

1

responsive information, and to account for the collection and subsequent production of the information to [the opposing party],' " *A. Farber,* 234 F.R.D. at 190, quoting from *National Ass'n of Radiation Survivors v. Turnage* (N.D.Cal.1987) 115 F.R.D. 543, at 556.

As a California court noted concerning a PMK deposition notice coupled with a demand for documents, "When a request for documents is made, however, the witness or someone in authority is expected to make an inquiry of everyone who might be holding responsive documents or everyone who knows where such documents might be held," *Maldonado v. Superior Court* (2002) 94 Cal.App.4th 1390, at 1396.

When the search proposed by NCR is measured against these obligations in light of the particular documents sought, and what the parties have learned of those documents from either the documents themselves or the testimony of witnesses, it is obvious the search NCR has proposed is designed to come up empty handed rather than produce documents which inarguably exist.

## II
## TOO FEW INDIVIDUALS' IMAGED HARD DRIVES AND/OR MAILBAGS ARE BEING SEARCHED

What NCR proposes is to search only computer imaged hard drives,  and electronic mailbags for 3 people:  Brenda Michalek, John Foote, and Vicki Rennick.

While searching the hard drives or mailbags of any particular employee or former employee will not yield many of the documents sought for reasons explained below, at a minimum, NCR should also search both imaged hard drives, and mailbags, of the following in addition to Michalek, Foote and Rennick:

Bruce Schagunn:      former Asst. Field Operations Director under John Foote and then his successor, John Harvey; Schagunn was identified by NCR's initial rule 26 disclosure as someone who had knowledge of the circumstances surrounding plaintiff's firing;

Steve Battleson:      former VP for NCR's Western Area, and the supervisor of Field Operations Directors John Foote ,and his successor, John Harvey;

Gerald Stover:      former HR Consultant who succeeded Brenda Michalek and was the HRC with whom Erick Aguilar corresponded concerning plaintiff's termination;

Christine Wallace:      former Sr. Vice-President, who has been designated as a PMK for NCR's Rule 30(b)(6) deposition July 9th;

Joe Hoyle:            former VP for HR; and

Andrea K. Ledford:    current NCR Sr. VP for HR.

Any current or former HR consultant whose computer hard drive is available to searching.

III

**WHY THE PROPOSED SEARCH IS INADEQUATE AND
WHAT NCR SHOULD BE ORDERED TO DO**

For the ease of the Court plaintiff will set forth each category and explain why the proposed search is inadequate, and what else NCR should be ordered to do in addition to searching the computer hard drives and mailbags of various individuals.

A.    Each and every "Performance Management Policy" providing guidance in 2007 or 2008 to Territory Managers and/or Field Operations Directors  on the evaluation of , and/or discipline to be imposed upon, Customer Engineers, including but not limited to that referred to by former NCR HR Director Vicki Rennick during her May 23, 2013 deposition at pp.52, line 1, through page 53, line 16.  Documents responsive to this request may be produced electronically in PDF format, or in paper hardcopy, at the option of NCR.

**Why the proposed search is inadequate and what else NCR should be ordered to do in searching for responsive documents:**

As these documents originated in HR, for use by the field personnel in supervisilng CEs, the search should begin by contacting HR personnel.

There is no basis for believing that any of the three individuals' computers and/or mailbags would have the "Performance Management Policy" that former HR Director Vicki Rennick testified exists:

Q    If I were to want to ask the company for that document, what language should I use?

A    You would ask for the performance management policy.

Q    Was that something that was in a hard copy given to the territory managers, or was it something available to them from NCR's intranet or from some other electronic source?

3

A        It was available electronically on the NCR internet, and there were many
         different documents about objective setting and then managing
         performance against objectives where they could go out and download
         policies.  They could take training. They could access, you know, FAQs for
         that, and then also from the internet, they could -- they could access one of
         the sites. It was where all the policies were stored, and they could download
         and print physical documents if they chose to.

Q        Were those performance management policies or guidelines available in
         2007 and 2008?

A        Yes. I believe so.

Q        Is that something the company has maintained for years?

A        Yes.

Rennick May 23, 2013 depo, pp.52:19-53:15.

     That there may not be a central repository for HR policies is hardly justification for
failing to contact the HR personnel, whether Sr. VP Ledford, or those down the chain of
command who would presumably know where the document now resides, if not at the location
where it was in 2008, as Rennick testified NCR maintained it "for years" prior to Rennick
leaving NCR in 2011.  The Court's order of November 23, 2010 required NCR to produce
responsive HR policies, and had NCR made a good faith effort to comply then Rennick could
have easily located and produced it; NCR should not be allowed to profit now by claiming
inability to locate it after Rennick has left the company.

     NCR was clearly on notice to preserve the Performance Management Policy, and
conspicuously absent from the declarations is any suggestion, much less claim, that it no longer
exists.

     Before searching hard drives and/or mailbags, NCR should be ordered to contact the
current HR Director (whoever holds Vicki Rennick's position), the current VP for HR (whoever
holds Joe Hoyle's position),  Andrea K. Ledford, current Sr VP for HR, and all currently
employed HR Consultants, to see if any of them can provide the document responsive to this
category

     Given the ease of contacting these people with an email asking them to look for, and send
to NCR's paralegal, whatever they find that is responsive, this is the minimum NCR must do to
comply with its obligation to make such efforts as are necessary to locate and produce the
document.

4

If that fails to turn up the document, then NCR should search the hard drives of Michalek, Foote, Rennick, Schagunn, Battleson, Stover, Wallace, Hoyle and Ledford.

B.      The electronically stored information, referred to by former NCR HR Director Vicki Rennick during her May 23, 2013 deposition at p.128, lines 8-16, constituting that portion of the Excel spreadsheet which contains information concerning Terry Doubt's April 1, 2008 placement upon a Performance Improvement Program.   (NB: ESI responsive to this request shall be produced electronically in MS Excel format.)

C.      The electronically stored information, referred to by former NCR HR Director Vicki Rennick during her May 23, 2013 deposition at p.128, lines 8-16, constituting that portion of the Excel spreadsheet which contains information concerning each and every customer engineer in the 750B Territory supervised by Erick Aguilar who was placed upon any Performance Improvement Program during 2008.  ESI responsive to this request shall be produced electronically in MS Excel format.

**Why the proposed search is inadequate and what else NCR should be ordered to do in searching for responsive documents:**

Initially, plaintiff notes that the search term NCR proposed was "share drive" when the emails referred to a "share**d** drive," making it possible that use of the wrong adjective may cause a search to miss a document that might otherwise be found if the term "shared drive" were used in the search.

There is no basis for believing that any of the three individuals' computers would have the information from the Excel spreadsheet, whether concerning Terry Doubt alone (category B) or the customer engineers in the 750B territory supervised by Erick Aguilar (category C).

After describing the existence of the spreadsheet, Rennick testified as follows:

Q       Who were the people that would have input comments, the HR professionals, whether HRC, yourself, others?

A       Correct.

Q       **Would the territory managers or those in operations, field operations director, would they make comments on that spreadsheet?**

A       **No. They did not have access to it**.

Rennick May 23, 2013 depo, pp.  131:22-132:4.

5

At the hearing on June 14, 2013, NCR's counsel, Patrick Mullin, represented that one of the documents in this case[1] was taken from NCR's response to the DFEH charge of age discrimination filed by plaintiff's co-worker, and fellow Monterey Team member Michael Knapp, who was fired in June of 2008, three months before NCR fired plaintiff.

NCR was clearly on notice to preserve the spreadsheet, and conspicuously absent from the declarations is any suggestion, much less claim, that it no longer exists.

D.    The electronically stored information constituting the "templates" which "have been created to define metrics and document targets for each metric," as stated in Andrea K. Ledford's April 18, 2008 10:28am email which has been marked as exhibit 47. (NB: ESI responsive to this request shall be produced electronically in any format readable by the programs comprising Microsoft Office, or in PDF format, as long as all information in the ESI is accessible when produced, or in paper hardcopy, at the option of NCR.

E.    The electronically stored information which would instruct, or provide guidance to, the territory manager to "allow the manager to make allowances for special circumstances that may have impacted an individual employee's ability to meet a specific objective" as stated in Andrea K. Ledford's April 18, 2008 10:28am email which has been marked as exhibit 47.  ESI responsive to this request shall be produced electronically in any format readable by the programs comprising Microsoft Office, or in PDF format, as long as all information in the ESI is accessible when produced, or in paper hardcopy, at the option of NCR.

**Why the proposed search is inadequate and what else NCR should be ordered to do in searching for responsive documents:**

See comments concerning category A.

Moreover, as Ledford is still apparently employed by NCR, any effort to locate the templates and guidelines/instructions should start by contacting her, and going from there.

Ledford's April 18, 2008 10:28am email was produced by plaintiff to NCR as part of plaintiff's continuing initial disclosure in both hardcopy and electronically.  The electronic copy has two links that may contain the templates and/or guidelines/instructions, "http://hrexpress1.ncr.com/hrexpress/benefits/bpp/bpp_home_2008.asp" and "http://hrexpress1.ncr.com/hrexpress/training/perfmeas/perfmeas_home.asp."

---

[1]  Exhibit 5, a chart showing the names and ages, *inter alia*, of 750B territory customer engineers from June 2008 through April 2009.

If an electronic search is to be done, having the address should make locating the document it a snap.

F.     Those documents which gave guidance or direction to NCR generally, and not concerning any specific Customer Engineer, on the custom and practice testified to by Vicki Rennick at page 74, line 18 through page 75, line 21, of her May 23, 2013 deposition,  to the effect that when a Customer Engineer was on a 60 day Performance Improvement Plan, if he or she was not improving, then 30 days before the end of the PIP NCR would issue a 30 day written warning to the CE.  Documents responsive to this request may be produced electronically in PDF format, or in paper hardcopy, at the option of NCR as long as the color scheme of the original ESI is preserved.

**Why the proposed search is inadequate and what else NCR should be ordered to do in searching for responsive documents:**

See comments concerning category A.

G.      The entire response submitted by NCR to the California Department of Fair Employment and Housing, of which exhibit 5 was a part, to the charge of discrimination made by Michael Knapp.  Documents responsive to this request may be produced electronically in PDF format, or in paper hardcopy, at the option of NCR as long as the color scheme of the original ESI is preserved.

While inquiring of the legal department is a good first step in the absence of any other information as to the document's location, NCR ignores that Rennick testified where it could be found:

Q     If Michael Knapp, following his termination made a claim with a California state agency known as the DFEH, which is essentially the California counterpart to the EEOC, would that be something that would cross your desk?

A     No.

Q     Would it be something that anyone in the HR department would respond to?

A      Yes. **The employee relations group**.

Rennick May 23, 2013 depo, pp. 147:20-148:3.


H.     Each and every draft of any performance evaluation for Terry Doubt for calendar 2007 prior to the final version marked as exhibit 34.  Documents responsive to this request may

be produced electronically in PDF format, or in paper hardcopy, at the option of NCR as long as the color scheme of the original ESI is preserved.

I.    Each and every piece of electronically stored information, sent either to or by John Foote, concerning the content or revision of any draft of the performance evaluation for Terry Doubt for calendar 2007, prior to the final version marked as exhibit 34.  Documents responsive to this request may be produced electronically in PDF format, or in paper hardcopy, at the option of NCR as long as the color scheme of the original ESI is preserved.

J.    Each and every piece of electronically stored information, sent either to or by John Harvey, concerning the content or revision of any draft of the performance evaluation for Terry Doubt for calendar 2007, prior to the final version marked as exhibit 34. Documents responsive to this request may be produced electronically in PDF format, or in paper hardcopy, at the option of NCR as long as the color scheme of the original ESI is preserved.

K.    Each and every piece of electronically stored information, sent either to or by Bruce Schagunn, concerning the content or revision of any draft of the performance evaluation for Terry Doubt for calendar 2007, prior to the final version marked as exhibit 34. Documents responsive to this request may be produced electronically in PDF format, or in paper hardcopy, at the option of NCR as long as the color scheme of the original ESI is preserved.

L.    Each and every piece of electronically stored information, sent either to or by Erick Aguilar, concerning the content or revision of any draft of the performance evaluation for Terry Doubt for calendar 2007 prior to the final version marked as exhibit 34. Documents responsive to this request may be produced electronically in PDF format, or in paper hardcopy, at the option of NCR as long as the color scheme of the original ESI is preserved.

**Why the proposed search is inadequate and what else NCR should be ordered to do in searching for responsive documents:**

These categories underscore why searching the three individuals' computers and/or mailbags are not enough; Bruce Schagunn was Foote's assistant during this period and the image of the harddrive from his computer and/or mailbag may have either the drafts of the evaluation or emails concerning its revision by Foote.

NCR should not only include Schagunn's hard drive and/or mailbag in its search, it should also search the office(s) where Schagunn, Foote, and later Harvey worked in 2008.

8

M.   All versions of any maps or charts reflecting NCR's demarcations in 2008 of the West, Central, Northeast, Southeast areas of the U.S. or NCR's subareas in the U.S. or NCR's territories in the U.S.  Documents responsive to this request may be produced electronically in any format readable by Microsoft Office, or in PDF format, at the option of NCR as long as the color scheme of the original ESI is preserved.

N.   All versions of any maps or charts reflecting the locations of NCR's customers in the 750B Territory in 2008.  Documents responsive to this request may be produced electronically in any format readable by Micrsosoft Office, or in PDF format, at the option of NCR as long as the color scheme of the original ESI is preserved.

**Why the proposed search is inadequate and what else NCR should be ordered to do in searching for responsive documents:**

First of all, the existence of maps was disclosed by Bruce Schagunn's March 18, 2008 email, which is page 2 of exhibit 69:

From:  Schagunn, Bruce
Sent:   Tuesday, March 18, 2008 6:09 PM
To:      Hawkins, David L
Cc:      Foote, John; Aguilar, Erick; Harvey, John A; Donahue, Thomas J;
            Sidwell, Chauna R; Schagunn, Bruce
Subject:        Remap a Few Work Groups in 750
Importance: High

David, We need to move boundaries around on a few territories:
750H4X Fairfield boundary moved East a bit
750H2X, 6X, 7X .. boundary moved south
750M no OCE, 48.. Boundary moved south
Can you make these boundaries effective 3/24? Or will you need another week?
Can you glean the workgroups and Zips off of the map to feed into Zip to Zone?
Will these changes be sent to the proper person who changes CAS assignments?

Accordingly, the first step would be to talk to David Hawkins, if still employed by NCR, and if not, then whoever replaced him in whatever department he worked in.

Moreover, according to Erick Aguilar, NCR's corporate office, not the hard drives of individuals, is the place where the maps responsive to these requests would be found:

Q        We'll mark as Exhibit 69 a document that's previously been so marked, your e-mail of March 19, 2008.

9

(Exhibit 69 marked for Identification.)

Q:     Did the corporate office have the ability to generate maps showing which localities were in which territories?

A      Yes, they did. Yeah.

Q      Was that something that you could get whenever you wanted it?

A      Right.

Aguilar May 2, 2013 depo, pp. 88:23-89:7.

O.     Each and every piece of electronically stored information which NCR contends shows that in 2008 NCR placed any Customer Engineers, other than Terry Doubt and Michael Knapp, on Performance Improvement Plan for failing to meet SLAs.  Documents responsive to this request may be produced electronically in a format readable by Microsoft Office, or in PDF formats, or in paper hardcopy, at the option of NCR as long as the color scheme of the original ESI is preserved.

**Why the proposed search is inadequate and what else NCR should be ordered to do in searching for responsive documents:**

NCR has inappropriately limited the search to a CE being placed on PIP as part of a "company-wide" initiative.

Moreover, as Bruce Schagunn was the Assistant Field Operations Director who in 2008 reported to John Foote, and then John Harvey after he succeeded Foote, his hard drive and mailbag should be searched.

Finally, the offices where Schagunn, Foote and Harvey worked should be searched for any hardcopies, not merely electronically stored information.

P.     Each and every piece of electronically stored information announcing, or commenting upon the implementation, of NCR's decision in 2007 to place more emphasis on SLAs in evaluating Customer Engineer's job performance,

**Why the proposed search is inadequate and what else NCR should be ordered to do in searching for responsive documents:**

As NCR's PMK John Harvey testified, the 2007 decision to place more emphasis on SLAs came from the corporate office; searching the hard drives of Foote, Harvey and Michalek is

10

a start, but inquiry of (1) John Harvey, and (2) those in HR at NCR's corporate office, would likely yield more information as to the sea change which Harvey described as NCR's PMK:

Q.    Sir, if Michael Knapp was rated as an unsatisfactory employee for four years running, why was he not terminated before then?

A.    Well, I believe I just answered that on your previous question, that when I said especially now in the past four or five years, roughly. Prior to that, NCR -- we didn't just terminate someone for SLA performance prior to that. It wasn't until the '07 to present that we've instituted a process where if we consistently do not meet our SLAs, that you could -- you could lose your job, you could be terminated. Prior to that we were much more -- much more laxed as a company in that regard.

NCR March 15, 2013 depo, John Harvey as PMK, pp. 60:17-61:3.

NCR should be ordered to contact all current members of NCR management, from President Bill Nuti and Sr. VP HR Andrea Ledford, all the way down, to determine the existence and location of documents responsive to this category.

NCR should also search the imaged hard drives and mail bags of the former employees identified in section II, above, for documents responsive to this category.

IV
## THE COURT SHOULD SET A FURTHER COMPLIANCE HEARING AND ORDER NCR TO PRODUCE INDIVIDUALS TO BE EXAMINED IN ADDITION TO PROVIDING A FURTHER DECLARATION BY JULY 1, 2013

As reflected by the Court's comment at the June 14, 2013 concerning NCRs' documented history of failing to search adequately for documents, in addition to providing the follow-up declaration by July 1, 2013 concerning why any responsive documents were not produced, plaintiff submits that the Court should also order

1.    A follow-up compliance hearing be set for July 19, 2013 at 9:30 a.m.; and

2.    NCR should produce for examination at the July 19th hearing persons who were involved in NCR's efforts to search for and produce documents with regard to any categories for which NCR was unable to produce all responsive documents..

Respectfully submitted

JOHN ELSON

11

JE: hs

I hereby declare under penalty of perjury under the laws of the United States, that the statements made in the foregoing letter are true and correct.

I further declare under penalty of perjury under the laws of the United States that the text of various documents, whether exhibits or deposition transcripts, are verbatim excerpts from the documents identified.

Executed on June 25, 2013, at Santa Fe, New Mexico.

_____
John Elson