UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TERRY DOUBT, an individual, | Case No:  C 09-5917 SBA |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| vs. | Docket 167 |
| NCR CORPORATION, A Maryland Corporation, and DOES 1 through 100, inclusive, | |
| Defendants. | |

The parties are presently before the Court on Defendant NCR Corporation's ("NCR") motion for summary judgment or, in the alternative, partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Dkt. 167.  Plaintiff Terry Doubt ("Plaintiff") opposes the motion.  Dkt. 175.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS NCR's motion, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.      BACKGROUND

The Court finds the following facts undisputed.  NCR is a hardware and electronics company that provides technical support for automated teller machines ("ATM") and point-of-sale ("POS") credit card machines at retail establishments (e.g., cash registers).  NCR's services include maintaining and servicing ATM machines and POS devices.

At all relevant times, Plaintiff was employed by NCR as a customer engineer ("CE").  He was responsible for servicing and repairing ATMs and POS devices at customer locations in the counties of San Benito, Monterey, and Santa Cruz.  He was part of a team of CEs known as the Monterey Team.  Plaintiff did not report to an office.

1    Instead, he received work assignments from a dispatcher through his hand-held device.

2    After receiving his assignments, Plaintiff traveled to customer locations from his home,

3    prioritizing his day according to his own discretion.

4           In 2007 and 2008, Plaintiff reported to Territory Manager Erick Aguilar ("Aguilar").

5    Aguilar reported to Field Operations Director John Foote, and then to Field Operations

6    Director John Harvey beginning in spring 2008.  Aguilar was responsible for the day-to-day

7    management of the CEs in his territory, including evaluating their performance.[1]  Aguilar

8    managed what was known as the 750B Territory, which included the Monterey Team.

9    During 2007, the 750B Territory was serviced by twenty-one CEs.  Nineteen of the twenty-

10   one CEs were over the age of 40 in 2007.  During 2008, the 750B Territory was serviced by

11   twenty-eight CEs.  Fourteen of the twenty-eight CEs were over the age of 40 in 2008.

12          During the relevant time period, NCR measured the performance of CEs by their

13   ability to meet certain objective, numerical performance targets in four primary metrics.

14   The four metrics NCR used to measure CE performance were:  (1) Service Level

15   Agreements ("SLA") Response; (2) SLA Restoral; (3) First Visit Resolution; and (4)

16   Closed Calls Per Day.  The "SLA Response" metric measures the percentage of time that a

17   CE responds to a service call within the time period required by a customer's contract.[2]

18   The "SLA Restoral" metric measures the percentage of time the CE took to restore the

19   customer's equipment within the time period proscribed by the customer's contract.  The

20   "First Visit Resolution" metric measures the percentage of time a CE was able to resolve a

21   problem on the first visit.  The "Closed Calls Per Day" metric measures the number of

22   service calls a CE completed in one day.

23          NCR established objective performance targets for each of the four metrics, which

24   were based primarily upon the performance of a CE's territory in the previous year.

25

26          [1] In 2009, Aguilar was terminated from NCR for changing the performance numbers
     of CEs in his territory, i.e., altering CEs' performance metric results.

27
28          [2] NCR's contracts with its customers dictated the time within which a CE was
     required to respond to a service call and resolve the customer's issue.

According to NCR, because CEs worked remotely at customer sites and their supervisors did not have frequent face-to-face contact with them, the numeric performance metrics were vital to its ability to evaluate CE performance and central to the performance evaluation ratings provided to CEs in their annual performance appraisals. In 2007, the objective performance targets became the primary focus of a CE's performance.

CE performance appraisals were typically completed by NCR's territory managers in February or March of each year. The performance appraisals evaluated a CE's performance for the prior year (e.g., a performance appraisal completed in February 2008 evaluated a CE's performance in 2007). Based on a territory manager's understanding of a CE's performance - primarily their ability to meet the four performance targets - territory mangers assigned them an overall rating of exceptional, successful, or needs improvement.

In 2007, Plaintiff missed each of his four performance targets[3]:

2007 Performance Metric Targets:

| First Visit Resolution:  85% |
| SLA Response: 84% |
| SLA Restoral:  88% |
| Closed Calls Per Day: 5 |

Plaintiff's 2007 Performance Metric Results:

| First Visit Resolution: 81% |
| SLA Response :  73% |
| SLA Restoral:  77% |
| Closed Calls Per Day: 3.8 |

As a consequence, Aguilar gave Plaintiff a needs improvement rating in his 2007 performance appraisal.

In March 2008, NCR issued a directive stating that all employees who received a needs improvement rating were to be placed on a sixty-day Performance Improvement Plan ("PIP").[4]  According to NCR, the purpose of this directive was to improve CE performance.

_____

[3] Plaintiff also failed to meet the performance targets in 2006.  However, he was given a successful rating by Aguilar based on Aguilar's belief that he was working hard to meet the targets.

[4] CEs that received a needs improvement rating on both their 2006 and 2007 performance appraisals were placed on a thirty-day PIP.

On April 1, 2008, Plaintiff was placed on a sixty-day PIP.  Plaintiff's PIP stated that if he did not show "substantial and immediate improvement" in his performance during the sixty days the PIP was in effect - evidenced by meeting the performance targets - he would be terminated.  In April 2008, Plaintiff missed three of the four performance targets.  In May 2008, Plaintiff missed all four of the performance targets.  Although it was initially determined by management that Plaintiff should be terminated as of June 2008 for failing to comply with his PIP, Plaintiff was afforded more time to improve his performance.  However, despite the additional time, Plaintiff was unable to improve his performance, i.e., meet the performance targets.  As a consequence, Plaintiff was terminated on September 16, 2008.[5]

## II.    LEGAL STANDARD

"A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A material fact is one that could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party.  Id.

The moving party's burden on summary judgment depends on whether it bears the burden of proof at trial with respect to the claim or defense at issue.  When, as here, the nonmoving party bears the burden of proof at trial, the moving party need only point out through argument that the nonmoving party does not have evidence to support the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001); Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000).  Thus, summary judgment for a defendant is appropriate

---

[5] In 2008, Aguilar hired six new CEs for the 750B Territory - Hieu Nguyen, age 54, Cesar Gurrero, age 51, Michael Mopia, age 34, Sanmang Mey, age 29, Vincente Ponce, age 43, and Darron Woods, age 43.

when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial.  Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 805-806 (1999).

Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine issue for trial.  Celotex, 477 U.S. at 324; see Anderson, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").  A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record . . . ."  Fed.R.Civ.P. 56(c)(1)(A).  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.  Heinemann v. Satterberg, 731 F.3d 914, 917 (9th Cir. 2013) (citing Fed.R.Civ.P. 56(e)).

To carry its burden, the nonmoving party must show more than the mere existence of a scintilla of evidence, Anderson, 477 U.S. at 252, and "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In fact, the nonmoving party must come forward with affirmative evidence from which a jury could reasonably render a verdict in its favor.  Anderson, 477 U.S. at 252, 257.  In determining whether a jury could reasonably render a verdict in the nonmoving party's favor, the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor.  Id. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Dias v. Nationwide Life Ins. Co., 700 F.Supp.2d 1204, 1214 (E.D. Cal. 2010).  To establish a genuine dispute of material fact, the nonmoving party must present affirmative evidence; bald assertions that genuine issues of material fact exist are insufficient.  Galen v. County

of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); see also F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment."). Further, evidence that is merely colorable or that is not significantly probative, is not sufficient to withstand a motion for summary judgment. Anderson, 477 U.S. at 249-250 (citations omitted).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id. The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense. Id.

## III.   DISCUSSION

### A.   Plaintiff's Request for Judicial Notice

In connection with the instant motion, Plaintiff filed a request for judicial notice. Plaintiff requests the Court take judicial notice of the parties' "joint letter to Magistrate Spero constituting plaintiff's motion to compel the production of documents, in particular pages 49-53 containing legal argument in support of plaintiff's claims." NCR objects to Plaintiff's request on the ground that the legal arguments made by Plaintiff in the joint letter are not the proper subject of judicial notice. Further, NCR asserts that Plaintiff's request appears to be an improper attempt to augment his opposition brief beyond the twenty-five page limit set forth in the Civil Local Rules. The Court concurs.

While the Court recognizes the existence of the joint letter, it does not consider any of the legal arguments presented therein because they are subject to reasonable dispute. See Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion, but not of the truth of the facts recited therein); M/V American Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir.

1983) (a court may take judicial notice of court records, but it may not take judicial notice of the truth of the contents of all documents found therein).  Further, the Court rejects Plaintiff's attempt to incorporate by reference legal arguments made in connection with a matter that is not before the Court.  The Court refuses to allow Plaintiff to engage in such conduct because it would provide an effective means of circumventing page limits on briefs set forth in the Civil Local Rules and this Court's Civil Standing Orders.  Accordingly, the Court will not consider the legal arguments that Plaintiff improperly seeks to incorporate by reference via his request for judicial notice.  This Court only considers arguments that are specifically and distinctively raised by the parties in their briefs.  See Indep. Towers of Wash., 350 F.3d 925, 929 (9th Cir. 2003) (noting that courts need not consider arguments that were not actually made in a party's brief).

### B.    NCR's Motion for Summary Judgment

The operative complaint alleges nine claims for relief against NCR.  On August 15, 2013, Plaintiff's fourth claim for relief was dismissed with prejudice.  NCR now moves for summary judgment on each of the remaining claims.  NCR's arguments are discussed below.

### 1.    Age Discrimination - Disparate Treatment

Plaintiff's seventh claim for relief, age discrimination based on disparate treatment, alleges that Plaintiff was placed on a PIP in April 2008 and was terminated in September 2008 for alleged job performance failings, even though substantially younger CEs in the 750B Territory had committed similar or even more "severe" job performance failings and were not placed on a PIP or terminated.

" 'Disparate treatment' is intentional discrimination on prohibited grounds.  DeJung v. Superior Court, 169 Cal.App.4th 533, 549 n. 10 (2008).  The California Fair Employment and Housing Act ("FEHA") prohibits discrimination in the workplace on account of the employee's age.  Cal. Gov't Code § 12940(a).  " 'Age' refers to the chronological age of any individual who has reached his or her 40th birthday."  Cal. Gov't Code § 12926(b).

In disparate treatment age discrimination claims under FEHA, plaintiffs can prove their cases in either of two ways:  by direct or circumstantial evidence.  DeJung, 169 Cal.App.4th at 549.  "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.  Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue."  Id. at 550.  Because direct evidence of discrimination is rare, the Supreme Court developed a tripartite burden shifting test to prove discrimination circumstantially.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

California has expressly adopted the McDonnell Douglas test in evaluating age discrimination claims brought under FEHA.  Guz v. Bechtel Nat'l Inc., 24 Cal.4th 317, 354 (2000).  Under the McDonnell Douglas test, a plaintiff must first establish a prima facie case of age discrimination by providing evidence that:  "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive."  Id. at 355.  "Generally, an employee can satisfy the last element of the prima facie case only by providing evidence that he or she was replaced by a substantially younger employee with equal or inferior qualifications."  See Diaz v. Eagle Produce, Ltd. Partnership, 521 F.3d 1201, 1207 n. 2 (9th Cir. 2008).

If plaintiff establishes a prima facie case, the employer must rebut the presumption of age discrimination that arises by presenting a legitimate, nondiscriminatory reason for the adverse action.  Guz, 24 Cal.4th at 355-356.  "If the employer sustains this burden, the presumption of discrimination disappears."  Id. at 356.  "[T]he question becomes whether the plaintiff has shown, or can show, that the challenged action resulted in fact from discriminatory animus rather than other causes."  Reeves v. Safeway Stores, Inc., 121 Cal.App.4th 95, 112 (2004).  To defeat a summary judgment motion, the employee must "offer substantial evidence that the employer's stated nondiscriminatory reason for the

adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination."  Reeves v. MV Transp., Inc., 186 Cal.App.4th 666, 673 (2010).  The employee cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Id. at 673-674.

A plaintiff can prove pretext in two ways:  (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.  Noyes v. Kelly Services, 488 F.3d 1163, 1170 (9th Cir. 2007).  "Direct evidence" is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.  Coghlan v. American Seafoods Co. LLC., 413 F.3d 1090, 1095 (9th Cir. 2005); Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998).  Direct evidence typically consists of clearly sexist, racist, ageist, or similarly discriminatory statements or actions by the employer.  See, e.g., Godwin, 150 F.3d at 1221 (supervisor stated he "did not want to deal with [a] female"); Cordova v. State Farm Ins., 124 F.3d 1145, 1149 (9th Cir. 1997).  Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present "specific" and "substantial" facts showing that there is a genuine issue for trial.  Noyes, 488 F.3d at 1170.

NCR contends that summary judgment is appropriate because Plaintiff cannot satisfy the first prong of the McDonnell Douglas test as he was not performing competently in his position when he was terminated and was not replaced by a substantially younger employee.[6]  In addition, NCR contends that, even assuming that Plaintiff can establish a prima facie case of age discrimination, summary judgment is appropriate because Plaintiff

---

[6] NCR does not contend that Plaintiff cannot establish the other elements of a prima facie case of age discrimination based on disparate treatment.  As such, the Court will not address those elements.

1   cannot establish the second and third prongs of the <u>McDonnell Douglas</u> test as it had a

2   legitimate nondiscriminatory reason for terminating Plaintiff (i.e., poor performance), and

3   there is no evidence that its stated reason for termination was a pretext for discrimination.

4          In response, Plaintiff did not cite any direct evidence of intentional discrimination,

5   such as comments demonstrating discriminatory animus.  Further, Plaintiff does not argue

6   that he was performing competently in his position when he was terminated in 2008.

7   Instead, Plaintiff "invokes the direct method of making a prima facie case, through the use

8   of circumstantial evidence - NCR's desire to get rid of higher earning CEs who were older

9   in favor of lower paid CEs who were younger."  However, because Plaintiff failed to

10  proffer evidence demonstrating that he was performing competently as a CE when he was

11  terminated, and because the undisputed evidence in the record demonstrates that he was not

12  meeting the objective performance targets established by NCR, Plaintiff has not established

13  a prima facie case of age discrimination under FEHA.  See <u>Sneddon v. ABF Freight</u>

14  <u>Systems</u>, 489 F.Supp.2d 1124, 1129 (S.D. Cal. 2007) (to establish a prima facie case of age

15  discrimination, plaintiff must come forward with some showing that his work was being

16  performed in a competent manner).[7]

17         Furthermore, even assuming that Plaintiff proffered sufficient evidence to establish a

18  prima facie case of age discrimination, NCR has offered a legitimate, nondiscriminatory

19  reason for terminating Plaintiff (i.e., poor performance),[8] and Plaintiff has not directed the

20  Court to specific, substantial evidence in the record demonstrating that NCR's proffered

21  nondiscriminatory reason for his termination was merely a pretext to conceal

22  discriminatory conduct.  Plaintiff's conclusory legal analysis regarding pretext is utterly

23

24         [7] While NCR argues in its moving papers that Plaintiff cannot establish a prima facie
    case of age discrimination based on disparate treatment because he was not replaced by a
25  substantially younger employee, NCR failed to proffer evidence supporting this argument.
    Further, in its reply, NCR did not respond to Plaintiff's assertion that he was replaced by a
26  36-year-old.  The Court construes NCR's silence as an abandonment of its contention that
    Plaintiff was not replaced by a substantially younger employee.

27         [8] Poor work performance is a legitimate, nondiscriminatory reason for an adverse
    employment action such as termination.  <u>Ramirez v. Salvation Army</u>, 2008 WL 670153, at
28  *8 (N.D. Cal. 2008) (citing cases).

devoid of any citation to evidence in the record.  Indeed, Plaintiff devotes less than one page of his opposition brief to responding to NCR's argument that summary judgment is appropriate with respect to this claim.

To the extent Plaintiff seeks to incorporate by reference the twenty-three page "Statement of Facts" section[9] of his brief into the argument section of his brief, the Court finds this improper.  On a motion for summary judgment where, as here, the moving party has sustained its burden, the nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  See Keenan, 91 F.3d at 1279. Plaintiff has failed to do so.  Plaintiff has not directed the Court to specific, substantial evidence in the record demonstrating the existence of a triable issue of fact on the issue of pretext.  It is not the role of the Court to search the record for facts that support a party's position and to make the party's arguments for it.  See Indep. Towers of Wash., 350 F.3d at 929 ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").[10]  In short, because Plaintiff has failed to direct the Court to particular evidence in the record casting doubt on NCR's legitimate, nondiscriminatory reason for his termination, he has failed to raise a triable issue of fact as to whether his termination was the result of discriminatory animus.  Accordingly, NCR's motion for summary judgment on Plaintiff's seventh claim for relief is GRANTED.  Plaintiff has failed to show the existence

_____

[9] The Court notes that Plaintiff devotes twenty-three pages of his opposition to the "Statement of Facts," while only devoting two pages to legal argument.

[10] To the extent Plaintiff attempts to establish a triable issue of fact regarding pretext by showing that "similarly situated" persons outside of his protected class were treated more favorably, he has failed to do so.  Plaintiff has not shown that the CEs he identifies in his opposition were similarly situated to him.  He provides no legal analysis in this regard whatsoever.  In the "Statement of Facts" section of his brief, Plaintiff asserts that certain CEs under 40 who failed to make their "SLAs as of YTD April 30, 2008" were not placed on a PIP or terminated for failing to make their SLA objectives.  While a showing that NCR treated "similarly situated" employees outside Plaintiff's protected class more favorably would be probative of pretext, Vasquez v. County of Los Angeles, 349 F.3d 634, 641(9th Cir. 2003), Plaintiff failed to demonstrate that the CEs he identifies are similarly situated. Id. (individuals are similarly situated when they have similar jobs and display similar conduct).  For example, Plaintiff has made no showing that the CEs he identifies failed to meet their objective performance targets in 2006 and 2007 like Plaintiff, were placed on a PIP in 2008 for failing to meet their performance targets in 2007 like Plaintiff, or failed to show improvement after being placed on a PIP like Plaintiff.

of elements essential to his claim on which he bears the burden of proof at trial.  Celotex, 477 U.S. at 322-323.[11]

## 2.   Age Discrimination - Disparate Impact

Plaintiff's sixth claim for relief, age discrimination based on disparate impact, alleges that the salary level of long-term CEs was a motivating factor in NCR's decision to terminate Plaintiff's employment, which resulted in NCR firing CEs who were substantially older than "relatively recently hired" lower earning CEs who were retained by NCR.

A disparate impact claim is a claim that "a facially neutral employer practice or policy, bearing no manifest relationship to job requirements . . . ha[s] a disproportionate adverse effect on members of the protected class [regardless of motive]."  Guz, 24 Cal.4th at 354 n. 20.  The California Legislature has expressly adopted the disparate impact theory in age discrimination cases.  Cal. Gov't Code § 12941.  Section 12941 provides that "the use of salary as the basis for differentiating between employees when terminating employment may be found to constitute age discrimination if use of that criterion adversely impacts older workers as a group, and . . . that the disparate impact theory of proof may be used in claims of age discrimination."  Id.

To establish a prima facie case, a plaintiff must:  "(1) identify the specific employment practice[] . . . being challenged; (2) show disparate impact; and (3) prove causation. . . ."  Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990).  To prove causation, the plaintiff must offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused [the plaintiff's termination] because of [his] membership in a protected group.  The statistical disparities must be sufficiently substantial that they raise such an inference of causation."  Id.  "The statistical

---

[11] Plaintiff suggests that it was unfair to terminate him because, among other things, there were "roadblocks" that prevented him from meeting his performance targets. However, the relevant question before the Court is whether discriminatory animus motivated NCR, not whether NCR's decision to terminate Plaintiff was wise, prudent, or fair.  See Reeves, 186 Cal.App.4th at 673-674; Guz 24 Cal.4th at 358 (an employer's true reasons need not necessarily have been wise or correct, they need only be nondiscriminatory).

1  evidence may not be probative if the data [sets] are 'small or incomplete.' " Shutt v.

2  Sandoz Crop Prot. Corp., 944 F.2d 1431, 1433 (9th Cir. 1991).

3       If the plaintiff establishes a prima facie case, the burden shifts to the defendant, who

4  may either discredit the plaintiff's statistics or submit its own statistics which show that no

5  disparity exists.  Rose, 902 F.2d at 1424.  The employer may also produce evidence that its

6  disparate employment practices are based on legitimate business reasons, such as job-

7  relatedness or business necessity.  Id.  If the defendant sustains its burden, the plaintiff must

8  then show that "other . . . selection devices, without similarly undesirable discriminatory

9  effect, would serve the employer's legitimate interest in efficient and trustworthy

10  workmanship."  Id.

11       NCR contends that summary judgment is appropriate because there is no evidence

12  that it had an employment practice of terminating CEs based on their rate of pay.  NCR

13  further contends that, even assuming that it had such a practice, summary judgment is

14  appropriate because Plaintiff cannot offer any statistical proof that the practice caused a

15  disparate impact on workers protected under FEHA on the basis of age.  In response,

16  Plaintiff failed to offer any specific legal analysis regarding this claim.  Instead, after

17  discussing why NCR's motion for summary judgment on his *disparate treatment* theory of

18  age discrimination should be denied, Plaintiff simply contends that he "has made a

19  sufficient showing for the jury to weigh" whether he suffered discrimination based on

20  disparate impact.  In support of his position, Plaintiff asserts, without elaboration or

21  analysis, that NCR's "tally of those CEs in the 750 B terrigory [sic] fired over a 10 month

22  period, shows that only those over 50 were fired; four men, out of a population of 20 or so

23  CEs."

24       The Court finds that Plaintiff's showing is inadequate to survive NCR's motion for

25  summary judgment.  Plaintiff has failed to establish a prima facie case of age

26  discrimination based on disparate impact.  Plaintiff has not proffered any competent

27  evidence demonstrating that NCR had a facially neutral practice or policy, bearing no

28  manifest relationship to job requirements, which had a disparate impact on employees over

forty years old.  Plaintiff did not provide any legal or statistical analysis whatsoever in support of this claim, let alone statistical proof showing a "stark pattern of discrimination unexplainable on grounds other than age."  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1283 (9th Cir. 2000)  ("To establish a prima facie case based solely on statistics, let alone raise a triable issue of fact regarding pretext, the statistics 'must show a stark pattern of discrimination unexplainable on grounds other than age.' "); see Life Technologies Corp. v. Superior Court, 197 Cal.App.4th 640, 650 (2011) (noting that "[s]tatistical proof is indispensable in a disparate impact case.").  Plaintiff has not established that a triable issue of fact exists as to either discriminatory impact or causation.  Plaintiff offers no authority supporting his suggestion that the disparate impact analysis should be limited to the termination of CEs in the 750B Territory during the 10-month period he identifies.  Indeed, courts have repeatedly rejected reliance on statistics where the statistical evidence is based on small or incomplete data sets and inadequate statistical techniques.  See e.g., Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 996-997 (1988); Pottenger v. Potlatch Corp., 329 F.3d 740, 748 (9th Cir. 2003) (statistics that take into account only two variables-termination and age-are treated "skeptically" when they fail to take other relevant variables into account); Shutt, 944 F.2d at 1433-1434 ("statistical evidence may not be probative if the data are 'small or incomplete' "); Contreras v. City of Los Angeles, 656 F.2d 1267, 1272 (9th Cir. 1981) (considerations such as small sample size can detract from value of statistical evidence).   Accordingly, NCR's motion for summary judgment on Plaintiff's sixth claim for relief is GRANTED.  Plaintiff has failed to show the existence of elements essential to his claim on which he bears the burden of proof at trial.  Celotex, 477 U.S. at 322-323.

### 3.     Wrongful Termination in Violation of Public Policy - Age Discrimination

Plaintiff's first and second claims for relief are predicated on his disparate treatment and disparate impact age discrimination claims under FEHA.  California law allows a discharged employee to "maintain a tort action and recover damages traditionally available

in such actions" when an employer's discharge of that employee "violates fundamental principles of public policy." Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 170 (1980). To state a Tameny claim, the public policy "must be: (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." Stevenson v. Superior Court, 16 Cal.4th 880, 894 (1997). A violation of FEHA may support a Tameny claim. City of Moorpark v. Superior Court, 18 Cal.4th 1143, 1159-1160 (1998). "However, if an underlying FEHA claim fails, any claim for wrongful discharge in violation of the public policy embodied in those claims fails." Peterson v. U.S. Bancorp Equipment Finance, Inc., 2010 WL 2794359, at *6 (N.D. Cal. 2010) (Armstrong, J.) (quotation marks omitted); Moore v. Avon Products, Inc., 2007 WL 2900204, at *10 (N.D. Cal. 2007) (Armstrong, J.). Accordingly, because the Court has determined that summary judgment is appropriate with respect to Plaintiff's FEHA age discrimination claims, NCR's motion for summary judgment on Plaintiff's first and second claims for relief is GRANTED.

### 4.   Wrongful Termination in Violation of Public Policy - Retaliation

Plaintiff's third claim for relief alleges that Plaintiff was wrongfully terminated in retaliation for his complaints concerning his excessive workload. According to Plaintiff, NCR's conduct violated California Labor Code §§ 6310 and 232.5.

Section 6310(b) provides that "[a]ny employee who is discharged . . . because the employee has made a bona fide oral or written complaint . . . of unsafe working conditions, or work practices, in his or her employment or place of employment . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer." Cal. Lab. Code § 6310(b). Section 232.5 provides that "[n]o employer may . . . [r]equire, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions." Cal. Lab. Code § 232.5.

Retaliatory discharge claims brought under California common law are analyzed under the burden shifting framework of McDonnell Douglas. See Yanowitz v. L'Oreal

1  USA, Inc., 36 Cal.4th 1028, 1042 (2005); McDaniels v. Mobil Oil Corp., 527 Fed.Appx.

2  615, 617 (9th Cir. 2013).  Generally, to establish a prima facie case of employment

3  retaliation, a plaintiff must show that he engaged in a protected activity as defined by the

4  relevant statute or law, that he was subjected to an adverse employment action, and that

5  there was a causal link between the two.  Muller v. Auto. Club of So. California, 61

6  Cal.App.4th 431, 451 (1998) (applying these elements in a § 6310 retaliation case).  As set

7  forth above, if the plaintiff demonstrates a prima facie case, the burden then shifts to the

8  defendant to show a legitimate, nonretaliatory reason for its adverse action against the

9  plaintiff.  Guz, 24 Cal.4th at 355-356.  If the defendant puts forth a legitimate reason, the

10  burden then rests with the plaintiff to prove that the defendant's proffered explanation is

11  merely pretext for underlying retaliation.  Id. at 356.  At this point, "the question becomes

12  whether the plaintiff has shown, or can show, that the challenged action resulted in fact

13  from [retaliatory] animus rather than other causes."  Reeves, 121 Cal.App.4th at 112.

14  NCR contends that summary judgment is appropriate because there is no evidence

15  that Plaintiff engaged in a protected activity, i.e., complained about unsafe working

16  conditions or work practices to anyone employed by NCR.  In addition, NCR contends that

17  summary judgment is appropriate because Plaintiff has no evidence that there is a nexus

18  between any purported complaints about unsafe working conditions or practices and his

19  termination.  In response, Plaintiff failed to address NCR's arguments, which the Court

20  construes as a concession by Plaintiff that summary judgment in favor of NCR is

21  appropriate with respect to this claim.  That aside, the Court finds that summary judgment

22  is warranted on the merits.

23  With respect to § 6310, Plaintiff failed to demonstrate that a triable issue of fact

24  exists as to whether he was unlawfully terminated for complaining about his "excessive

25  workload."  Plaintiff has made no showing that an employee's complaints about his

26  excessive workload constitute protected activity within the meaning of the statute.  Nor has

27  Plaintiff shown a causal link between his complaints and his termination.  Further, even

28  assuming for the sake of argument that Plaintiff made a sufficient showing to establish a

1  prima facie case, Plaintiff failed to cite specific and substantial evidence demonstrating that

2  NCR's stated reason for discharge (i.e., poor performance) was untrue or pre-textual, or

3  that his discharge was otherwise the result of retaliatory animus.  Accordingly, NCR's

4  motion for summary judgment on Plaintiff's third claim for relief predicated on a violation

5  § 6310 is GRANTED.  Plaintiff has failed to show the existence of elements essential to his

6  claim on which he bears the burden of proof at trial.  Celotex, 477 U.S. at 322-323.

7        To the extent Plaintiff contends that he was wrongfully terminated in violation of the

8  policy embodied in § 232.5, the Court finds that Plaintiff has failed to demonstrate that this

9  claim survives summary judgment.  Plaintiff has not shown that he engaged in a protected

10  activity as defined by § 232.5.  Moreover, even assuming that § 232.5 can form the basis of

11  a claim for termination in violation of public policy, Plaintiff has not cited any evidence

12  showing that NCR required him, as a condition of his employment, to refrain from

13  disclosing information about its working conditions.  Nor has Plaintiff cited any evidence

14  showing that NCR's stated reason for discharge (i.e., poor performance) was untrue or pre-

15  textual, or that his discharge was otherwise the result of retaliatory animus.  Accordingly,

16  NCR's motion for summary judgment on Plaintiff's third claim for relief predicated on a

17  violation § 232.5 is GRANTED.  Plaintiff has failed to show the existence of elements

18  essential to his claim on which he bears the burden of proof at trial.  Celotex, 477 U.S. at

19  322-323.

20        **5.    Wrongful Termination in Violation of Public Policy - Overtime**

21        Plaintiff's fifth claim for relief, wrongful termination in violation of the fundamental

22  public policy requiring the payment of overtime, alleges that a motivating factor for NCR's

23  termination of his employment was the substantial amount of overtime that he was required

24  to work.  According to Plaintiff, his termination violated the fundamental policy of the

25

26

27

28

1  State of California prohibiting retaliation against an employee in response to a complaint of

2  unlawful conduct.[12]

3     NCR contends that summary judgment is appropriate because Plaintiff has not

4  alleged a cognizable legal theory.  Additionally, NCR contends that summary judgment is

5  appropriate because, even assuming that Plaintiff has alleged a cognizable legal theory,

6  Plaintiff has no evidence demonstrating that he was terminated because he worked overtime

7  or complained about working overtime.  In response, Plaintiff states, without further

8  explanation, that this claim is predicated on his wrongful discharge for working overtime.

9  Further, Plaintiff argues, without elaboration, that summary judgment is inappropriate

10  because NCR has failed to carry its burden as the moving party.  The Court disagrees.

11     An employee establishes a claim for wrongful termination in violation of public

12  policy if he proves that the employer "violated a policy that is (1) fundamental, (2)

13  beneficial for the public, and (3) embodied in a statute or constitutional provision."  Turner

14  v. Anheuser-Busch, Inc., 7 Cal.4th 1238, 1256 (1994).[13]  When a plaintiff alleges

15  retaliatory termination as the predicate for a claim of wrongful employment termination in

16  violation of public policy, California follows the burden shifting analysis of McDonnell

17  Douglas.  Loggins v. Kaiser Permanente Int'l, 151 Cal.App.4th 1102, 1108-1109 (2007).

18  Under this analysis, the plaintiff must establish a prima facie case of wrongful termination

19  based on retaliation by showing:  (1) he engaged in a "protected activity," (2) the employer

20  subjected him to an adverse employment action, and (3) a causal link existed between the

21  protected activity and the employer's action.  Id. at 1109.  If the employee establishes a

22

23     [12] Notably, the operative complaint does not identify any unlawful conduct that
24  Plaintiff complained about.  For example, Plaintiff does not allege that he was terminated
   for reporting a violation of overtime laws.  Nor does Plaintiff allege that NCR failed to pay
25  him for working overtime.

26     [13] Cases in which courts have found violations of public policy generally fall into
   four categories:  (1) refusing to violate a statute, (2) performing a statutory obligation, (3)
27  exercising a statutory right or privilege, and (4) reporting an alleged violation of a statute of
   public importance.  However, the tort of wrongful discharge in violation of public policy is
28  not limited to these four categories.  Gould v. Maryland Sound Industries, Inc., 31
   Cal.App.4th 1137, 1147 (1995).

prima facie case, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action.  Id.  If the employer produces evidence showing a legitimate reason for the adverse employment action, the burden shifts back to the employee to provide "substantial responsive evidence" that the employer's proffered reasons were untrue or pretextual.  Id.

As an initial matter, Plaintiff has failed to proffer any authority supporting the proposition that California law recognizes a claim for wrongful termination in violation of public policy predicated on complaints about working overtime.  Moreover, even assuming that Plaintiff's conduct constitutes protected activity (i.e., Plaintiff's claim involves a fundamental public policy of the type which will support a claim for tortious wrongful discharge), Plaintiff has failed to raise a triable issue demonstrating the existence of a causal link between such protected activity and his termination.  Plaintiff has not directed the Court to any particular evidence in the record showing that he was terminated because he complained about working overtime.  The evidence in the record reveals that Plaintiff sent his immediate supervisor, Aguilar, an email entitled "Overtime report burnout" in August 2008, and that Plaintiff mentioned to Aguilar in August 2007 that he was getting burned out from overtime.  However, Plaintiff has not cited specific evidence showing that Aguilar told his supervisor, Field Operations Director Foote, or anyone else working for NCR that Plaintiff had complained about working overtime.  Nor has Plaintiff cited any evidence showing that he complained about overtime to anyone other than Aguilar.  Further, Aguilar testified that he opposed terminating Plaintiff and that Field Operations Director Foote was responsible for Plaintiff's termination.  These facts evince a lack of causal connection between Plaintiff's comments to Aguilar about working overtime and his termination, particularly given the evidence in the record supporting NCR's contention that Plaintiff was terminated for poor performance.  Plaintiff, for his part, has not proffered any evidence or legal analysis demonstrating that his comments to Aguilar about working overtime raise a triable issue of fact for trial.

Finally, even assuming that Plaintiff has made a sufficient showing of retaliatory termination based on complaints about working overtime, NCR has proffered evidence showing that there was a legitimate, nonretaliatory reason for his termination (i.e., poor performance), and Plaintiff has failed to cite specific "substantial responsive evidence" demonstrating that NCR's proffered reason for his termination was untrue or pretextual. Accordingly, NCR's motion for summary judgment on Plaintiff's fifth claim for relief is GRANTED.  Plaintiff has failed to show the existence of elements essential to his claim on which he bears the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322-323.

### 6.        Breach of Implied Contract

Plaintiff's eighth claim for relief alleges a claim for breach of implied contract. Plaintiff alleges that NCR breached the terms of the parties' implied contract by terminating him without good cause.

In California, when an employee's term of employment is not specified in an employment contract or other document or oral agreement, it is presumed that the employment is terminable at-will with or without cause.  <u>Guz</u>, 24 Cal.4th at 335; <u>see</u> Cal. Lab. Code § 2922.  While the presumption of at-will employment is strong, it is subject to several limitations, including an agreement that the employee will be terminated only for "good cause."  <u>Id.</u> at 335-336.  The contractual understanding that an employee will only be terminated for "good cause" need not be express, but may be implied-in-fact, arising from the parties' conduct evidencing their actual mutual intent to create such an enforceable limitation.  <u>Id.</u> at 336.

"To raise a triable issue of material fact and defeat an employer's motion for summary judgment based on the presumption of at-will employment, a plaintiff must produce competent evidence of an agreement that he or she could not be discharged without good cause."  <u>Eisenberg v. Alameda Newspapers</u>, <u>Inc.</u>, 74 Cal.App.4th 1359, 1387 (1999). In determining whether an implied-in-fact contract exists, courts examine the "totality of the circumstances."  <u>Guz</u>, 24 Cal.4th at 337.  Factors courts consider include:  (1) the employer's personnel policies and practices; (2) the longevity of the employee's service;

(3) actions or communications by the employer indicating assurances of continued employment; and (4) practices within the industry in which the employee is engaged. Foley v. Interactive Data Corp., 47 Cal.3d 654, 680 (1988).  Where "the undisputed facts negate the existence or the breach of the contract claimed, summary judgment is proper." Guz, 24 Cal.4th at 337.

NCR contends that summary judgment is appropriate because it did not engage in any conduct creating an implied-in-fact contract to terminate Plaintiff only for good cause. NCR further contends that, even assuming that such a contract existed, summary judgment is appropriate because Plaintiff was terminated for good cause.  In response, Plaintiff argues that it is for a jury to decide whether an implied-in-fact contract to terminate for good cause existed.  In support of his position, Plaintiff asserts that he was a long-time employee of NCR and that certain human resources and management personnel admitted that NCR had a policy to terminate for good cause.  In addition, Plaintiff asserts that NCR's practices and progressive discipline program embodied in the PIP process created an implied-in-fact contract to terminate only for good cause.

The Court finds Plaintiff's showing insufficient to raise a triable issue of fact as to his at-will employment status.  Plaintiff has not directed the Court to specific, competent evidence in the record rebutting the presumption of at-will employment.  Significantly, Plaintiff has not proffered any evidence of an actual promise or assurance that he would be employed for a specific term or as long as he was doing a good job, or that he could only be terminated for good cause.  Nor has Plaintiff provided the Court with any evidence reflecting practices in the industry in which he was employed, such as evidence showing that employees in his industry are terminated only for good cause.  Further, to the extent Plaintiff argues that NCR had an unwritten policy or practice of terminating its employees only for cause, the Court rejects this argument.  The deposition testimony relied upon by Plaintiff merely indicates that certain human resource and management employees understood that employees were typically terminated for cause, i.e., employees were terminated for a reason.  However, such evidence does not raise a triable issue of fact as to

1   whether NCR maintained an unwritten policy or practice of terminating employees *only* for

2   good cause.  See Guz, 24 Cal.4th at 345 (holding that company president's testimony that

3   he understood that the defendant terminated people only for "good reason" was insufficient

4   as a matter of law to permit a finding that the company had contracted away its right to

5   discharge at-will); see also Yen v. Yang Ming (America) Corp., 2005 WL 6133905, at *5

6   (C.D. Cal. 2005) ("the understanding and pronouncements of employees regarding an

7   unwritten company policy or practice to terminate only 'for cause' generally are not

8   sufficient to rebut the statutory presumption of at-will employment").

9           Additionally, contrary to Plaintiff's suggestion, employment longevity, without

10  more, does not establish an implied-in-fact contract.  See Guz, 24 Cal.4th at 341-342 ("an

11  employee's mere passage of time in the employer's service, even where marked with

12  tangible indicia that the employer approves the employee's work, cannot alone form an

13  implied-in-fact contract that the employee is no longer at will").  Further, contrary to

14  Plaintiff's contention, the fact that a company has a progressive discipline system does not

15  create an implied-in-fact contract to terminate only for cause.  Davis v. Consol.

16  Freightways, 29 Cal.App.4th 354, 367-368 (1994) (holding that the defendant's use of

17  techniques to encourage compliance, other than immediate termination, did not demonstrate

18  that the at-will employment status had been modified; stating that to hold otherwise would

19  force an employer "to terminate employees for any and every infraction-or none at all-in

20  order to maintain the presumption of at-will employment").  Finally, Plaintiff's belief that

21  NCR needed good cause to terminate him based on NCR's performance improvement

22  program is insufficient to overcome the presumption of at-will employment.  Eisenberg, 74

23  Cal.App.4th at 1390.  Indeed, Plaintiff's belief that he could only be terminated for good

24  cause is irrelevant.  See id. at 1387 (despite plaintiff's understanding, "a plaintiff must

25  produce competent evidence of an agreement that he or she could not be discharged without

26  good cause").

27          Furthermore, even assuming for the sake of discussion that an implied-in-fact

28  contract was created in which Plaintiff could only be terminated for good cause, NCR has

shown that good cause existed to terminate Plaintiff.  California law defines "good cause" as "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual."  Cotran v. Rollins Hudig Hall Intern., Inc., 17 Cal.4th 93, 107-108 (1998).  The evidence in the record shows that Plaintiff was placed on a PIP in April 2008 based on his failure to meet specific objective performance metrics in 2007.  The evidence further shows that Plaintiff was terminated in September 2008 for failure to comply with his PIP.  Plaintiff, for his part, does not dispute that poor performance constitutes good cause to terminate employment.  See Hoy v. Sears, Roebuck & Co., 861 F.Supp. 881, 887 (N.D. Cal. 1994) (Armstrong, J.).  Moreover, Plaintiff has not demonstrated that NCR lacked good cause to terminate him for poor performance.  Accordingly, NCR's motion for summary judgment on Plaintiff's eighth claim for relief is GRANTED.

### 7.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's ninth claim for relief alleges that NCR breached the implied covenant of good faith and fair dealing in the parties' implied-in-fact employment agreement by terminating his employment.  NCR contends that summary judgment is appropriate because Plaintiff does not have an express or implied-in-fact employment contract.  In addition, NCR contends that summary judgment is appropriate because, even if the parties entered into an employment contract that only allowed termination for good cause, Plaintiff was terminated for good cause.  In response, Plaintiff failed to address NCR's arguments, which the Court construes as a concession by Plaintiff that summary judgment is appropriate with respect to this claim.

The above notwithstanding, the Court finds that this claim fails on the merits because "the implied covenant of good faith and fair dealing cannot supply limitations on termination rights to which the parties have not actually agreed."  Guz, 24 Cal.4th at 342, 349-350.  In other words, summary judgment is appropriate because "[a]n at-will employee cannot use the implied covenant to create a for cause employment contract where none exists."  Eisenberg, 74 Cal.App.4th at 1391.  Having found that Plaintiff failed to raise a

1  triable issue of fact as to whether the parties entered into an implied-in-fact contract to

2  terminate only for good cause, Plaintiff's claim for breach of the implied covenant of good

3  faith and fair dealing fails as a matter of law.  Id.; see Guz, 24 Cal.4th at 350 (breach of the

4  implied covenant cannot logically be based on a claim that the discharge of an at-will

5  employee was made without good cause).  Accordingly, NCR's motion for summary

6  judgment as to Plaintiff's ninth claim for relief is GRANTED.

7  **8.    Evidentiary Objections**

8  In its reply, NCR makes numerous objections to the evidence submitted by Plaintiff

9  in opposition to the instant motion.  The Court declines to rule on NCR's evidentiary

10 objections because even when the objected to evidence is considered, NCR is entitled to

11 summary judgment.  See Banga v. First USA, NA, --- F.Supp.2d ----, 2014 WL 1158872, at

12 *4, n. 6 (N.D. Cal. 2014) (Armstrong, J.).

13 **IV.    <u>CONCLUSION</u>**

14 For the reasons stated above, IT IS HEREBY ORDERED THAT:

15 1.    NCR's motion for summary judgment is GRANTED.

16 2.    The Clerk shall close the file and terminate all pending matters.

17 IT IS SO ORDERED.

18 Dated:  8/7/2014

19 _____
   SAUNDRA BROWN ARMSTRONG
20 United States District Judge

21

22

23

24

25

26

27

28